Present:  All the Justices

DAVID J. HARRIS
                                        OPINION BY
v.  Record No. 990270       JUSTICE LAWRENCE L. KOONTZ, JR.
                                      November 5, 1999
COMMONWEALTH OF VIRGINIA


            FROM THE COURT OF APPEALS OF VIRGINIA


     In this appeal, we consider a defendant's claims that he

was denied his right to a speedy trial under Code § 19.2-243 and

the Sixth Amendment of the United States Constitution where he

was reindicted for the same offenses following the granting of

the Commonwealth's motion for nolle prosequi on the original

indictment.  The dispositive issues are whether the Commonwealth

had good cause for the nolle prosequi motion, and whether its

motivation therefor constituted a bad faith or oppressive tactic

amounting to prosecutorial misconduct.

                           BACKGROUND

     In 1995, David J. Harris falsely represented to his

employee-union, the International Association of Firefighters

(IAFF), that he was in financial need as a result of unpaid

medical expenses arising from the medical care of Harris' unborn

son.  Harris provided IAFF with an invoice for expenses, which

Harris falsely represented as not having been paid by his

insurer.  In response to Harris' false representation, IAFF

issued a check to Harris in the amount of $6,744.11.

Subsequently, in an attempt to procure additional money, Harris made a second false representation to IAFF in the form of a fabricated invoice showing additional unpaid expenses.

On January 23, 1996, the Loudoun County General District Court held a preliminary hearing and found probable cause to believe that Harris had committed the felony offense of obtaining money by false pretenses from IAFF. Code § 18.2-178. The charge was certified to the grand jury. Subsequently, on February 12, 1996, Harris was indicted in a two-count indictment for obtaining money by false pretenses from IAFF and for attempting to obtain money by false pretenses from IAFF. Code § 18.2-26. At the Commonwealth's request, a jury trial was set for September 3, 1996. Harris was not held in custody pending his trial.

On August 15, 1996, the Commonwealth filed a motion for a continuance on the grounds that it had been unable to obtain documents essential to the prosecution from both a local financial institution and an out-of-state financial institution.[1] On August 22, 1996, a hearing was held on the Commonwealth's motion. During argument, the Commonwealth conceded that "there's a speedy trial issue," but asserted that the case could

---

[1]The record reflects that the Commonwealth obtained subpoenas <u>duces</u> <u>tecum</u> for these documents in May and July, 1996.

be reset, subject to an available date on the trial court's docket, within the statutory nine-month period.

Harris opposed the granting of a continuance. He contended that witnesses for his case would be inconvenienced by the delay and that the Commonwealth had failed to act with appropriate diligence to obtain the documents. The trial court denied the motion and admonished the Commonwealth for not timely requesting the subpoenas duces tecum to obtain the documents.[2] The Commonwealth then moved to nolle prosequi the indictment. Over Harris' objection, the trial court granted this motion and stated, "Mr. Harris, you are free to go."

On October 15, 1996, the grand jury directly indicted Harris for the same offenses. By agreement with the Commonwealth, Harris appeared, accepted service, and was arraigned on the indictment on November 1, 1996. The Commonwealth had previously agreed to Harris' release on personal recognizance and, accordingly, Harris was not held in custody.

---

[2]Harris contends that the trial court offered the Commonwealth the option of withdrawing its request for a jury trial in order to obtain the continuance. The record reflects, however, only that the trial court noted that the request for a jury trial was a factor in its consideration of the motion for a continuance.

On March 31, 1997, Harris moved to dismiss the indictment. In a supporting memorandum, Harris contended that the Commonwealth lacked good cause for seeking the nolle prosequi of the original indictment as required by Code § 19.2-265.3. Relying on Battle v. Commonwealth, 12 Va. App. 624, 406 S.E.2d 195 (1991), Harris contended that the Commonwealth had effectively continued the first prosecution in the form of the second, thus denying him his statutory rights of speedy trial.

Harris further contended that, even if his statutory speedy trial right had not been violated, his right to a speedy trial under the Sixth Amendment of the United States Constitution had been prejudiced by the delay occasioned by the Commonwealth's nolle prosequi of the original indictment. Harris conceded that he could not "determine . . . whether any evidence will be lost due to witness unavailability, or whether there will be an inability of any witness . . . to now accurately recall events." However, he asserted that he had been prejudiced by a change in counsel necessitated when his original counsel ended his employment with the firm retained by Harris and discontinued his practice of law.

In a responding brief, the Commonwealth, relying on Arnold v. Commonwealth, 18 Va. App. 218, 443 S.E.2d 183, aff'd, 19 Va. App. 143, 450 S.E.2d 151 (1994)(en banc), contended that the motion for nolle prosequi of the original indictment had been

4

properly taken and, thus, Harris' statutory period in which to be afforded a speedy trial ran from the date of his arraignment on the second indictment. The Commonwealth further contended that Harris had failed to show that the delay was prejudicial, precluding a review of his claim for a violation of his Sixth Amendment right.

In a letter opinion, the trial court indicated that it would deny the motion to dismiss. Citing Arnold, 18 Va. App. at 222, 443 S.E.2d at 185, the trial court held that the nolle prosequi of the original indictment "laid to rest that indictment, . . . . as though it never had existed." Accordingly, the trial court concluded that Harris' statutory speedy trial right was to be calculated from the date of his arraignment on the charges in the second indictment.[3]

The trial court continued in its opinion letter to consider Harris' claim that the delay in prosecuting him constituted a violation of his Sixth Amendment right to a speedy trial. The trial court concluded that "[t]he evidence before the Court . . . does not justify the conclusion that any such deprivation

---

[3]Although Harris had not expressly asserted a violation of his due process rights at this time, the trial court further stated that it found no improper motive or prosecutorial vindictiveness in the Commonwealth's decision to nolle prosequi the original indictment or in its electing to seek the later indictment of Harris for the same offenses and, thus, no basis for finding a due process violation.

has occurred." An order incorporating by reference the trial court's opinion letter was entered May 29, 1997.

On July 29, 1997, Harris entered into a conditional plea agreement whereby he agreed to plead guilty to attempting to obtain money by false pretenses from IAFF while reserving his right to appeal the denial of his speedy trial claims. By order entered August 18, 1997, the trial court found Harris guilty of that offense, sentenced him to a suspended six months term of confinement, and ordered him to make restitution.

Harris noted an appeal to the Court of Appeals. With respect to the speedy trial right under Code § 19.2-243, Harris contended that the trial court erred in finding that the nolle prosequi of the original indictment had been taken for good cause. He asserted that because the trial court had denied the Commonwealth's motion for a continuance, there was no good cause for sustaining the motion for nolle prosequi as well. Harris further asserted that the trial court erred in finding that there had been no improper motive in seeking the nolle prosequi and that this "bad faith" infringed upon his constitutionally protected right to a speedy trial. Harris also contended that the delays occasioned by the nolle prosequi of the original indictment had violated his Sixth Amendment right to a speedy trial.

6

In an unpublished opinion, Harris v. Commonwealth, Record No. 2087-97-4 (October 20, 1998), the Court of Appeals rejected Harris' assertion that the motion for nolle prosequi had been granted without good cause.  Noting that the result of a motion for nolle prosequi being granted was more favorable to the defendant than where a case is merely continued, the Court of Appeals found that it was "uncontroverted that the Commonwealth had not obtained documents indispensable to prosecution of [Harris] on the scheduled trial date."  In this context, the Court held that the Commonwealth had made a sufficient showing of good cause for the trial court to sustain a motion for nolle prosequi.

Having thus found that Harris lacked grounds to assert a violation of his statutory right to a speedy trial, the Court of Appeals concluded that there was no presumption of prejudice in the delay occasioned by his release from the original charges. The Court further concluded that Harris had failed to demonstrate actual prejudice as a result of this delay, thus he was precluded from asserting a violation of his Sixth Amendment right.

The Court of Appeals further held that the Commonwealth's motivation in making the motion for nolle prosequi was that it was "unable to properly prosecute the original indictment, without suggestion of unfair or oppressive tactics."

7

Accordingly, the Court rejected Harris' assertion of prosecutorial misconduct.

On January 4, 1999, the Court denied Harris' petition for a rehearing en banc. We awarded Harris this appeal.

DISCUSSION

Harris first contends that the trial court's granting of the motion for nolle prosequi of the first indictment without any showing of good cause by the Commonwealth was error and, thus, the second indictment was effectively a continuation of the original prosecution and subject to the speedy trial time limits of the original prosecution, which would have commenced from the date probable cause was found in the general district court.[4] Specifically, he contends the record is devoid of any

---

[4]The Commonwealth contends that Harris failed to preserve his objection to the trial court's "good cause" determination at the time that the motion for nolle prosequi was granted. During oral argument, the Commonwealth further contended that Harris is barred from collaterally challenging the granting of the motion for nolle prosequi, asserting that his remedy was to have challenged the trial court's action on direct appeal. We disagree. At the time the motion for nolle prosequi was granted, Harris was not an "aggrieved party . . . [petitioning] from [a] final conviction in a circuit court of a traffic infraction or a crime." Code § 17.1-406 (emphasis added). Accordingly, Harris had no right to petition the Court of Appeals for a review of the trial court's action at that time. Harris' right of appeal accrued only when he was convicted under the second indictment. The issues before us arise from his assertion of his speedy trial rights, including the claim that the original indictment was improperly terminated, during that prosecution.

8

basis upon which the trial court could have granted the motion for <u>nolle</u> <u>prosequi</u> for "good cause." This is so, Harris asserts, because the Commonwealth could not rely on its argument in favor of the motion for a continuance as supporting its motion for <u>nolle</u> <u>prosequi</u> and offered no additional reason to support the motion before the trial court made its ruling. Harris further asserts that the trial court's denial of the continuance motion establishes that there was no good cause to support that motion and, thus, none to support the motion for <u>nolle</u> <u>prosequi</u>. We disagree.

We review the granting of a motion for <u>nolle</u> <u>prosequi</u> under well-settled principles of law. Code § 19.2-265.3 provides that "[n]olle prosequi shall be entered only in the discretion of the court, upon motion of the Commonwealth with good cause therefor shown." The express language of the statute commits a finding of good cause to the discretion of the trial court. "In reviewing an exercise of discretion, we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." <u>Beck v. Commonwealth</u>, 253 Va. 373, 385, 484 S.E.2d 898, 906 (1997). Accordingly, the granting of a motion for <u>nolle</u> <u>prosequi</u> will only be overturned if there is clear evidence that the decision to grant the motion was not judicially sound.

Harris' contention that the Commonwealth could not rely on its argument in favor of a continuance to support its subsequent motion for nolle prosequi is without merit. It is clear from the record that the Commonwealth sought the nolle prosequi as an alternative to the continuance and on the same grounds. That argument and its underlying factual assertions were before the trial court, and it was not necessary for the Commonwealth to reiterate its position under those circumstances.

Harris' contention that the trial court's refusal to grant the continuance is tantamount to a finding that there was no good cause to support the subsequent motion for nolle prosequi is equally without merit. In denying the Commonwealth's motion for a continuance, the trial court noted that Harris' concern for rescheduling his witnesses and the trial court's concern over the difficulty in setting a new date for a jury trial weighed against granting the motion. These concerns were not applicable to the subsequent motion for nolle prosequi. Moreover, as the Court of Appeals noted, whereas a continuance granted over the defendant's objection is not favorable to him in certain respects, a nolle prosequi provides him with the benefit of being released from the terms of his bond or from being held in custody. Thus, the trial court's determination of whether to grant the Commonwealth's motion for nolle prosequi involved a different calculus from the one it had applied to the

10

continuance motion.  The record fairly supports the trial court's action in granting the nolle prosequi and, accordingly, there is no basis for finding that decision was not founded upon good cause shown by the Commonwealth.

Harris next contends that even if there was sufficient good cause to support the granting of the motion for nolle prosequi, the Commonwealth's motive therefor was improper.  Harris asserts that the Commonwealth acted in bad faith and used "oppressive and unfair trial tactics" in order to avoid the operation of the speedy trial statute.  We disagree.

Addressing the issue of prosecutorial misconduct in Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978), the United States Supreme Court stated, "for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'"  Id., 434 U.S. at 363.  In the instant case, the record does not support a conclusion that the decision to nolle prosequi the indictment was made to penalize Harris for his reliance on his legal rights.  Rather, the Commonwealth's motion for nolle prosequi resulted from the Commonwealth's inability to go forward with the prosecution without a continuance in order to obtain essential documentary evidence. We recognize that the trial court found that the Commonwealth's failure to obtain the necessary documents in a timely manner

11

was, at least in part, due to a lack of adequate foresight and preparation on the part of the Commonwealth's Attorney.[5] While such behavior is not to be encouraged, on this record it does not demonstrate bad faith on the Commonwealth's part. Nor does the decision of the Commonwealth to seek a nolle prosequi of the indictment rise to the level of oppressive tactics amounting to prosecutorial misconduct in this instance. Cf. Battle v. Commonwealth, 12 Va. App. at 630, 406 S.E.2d at 198 (prohibiting the use of the threat of nolle prosequi in order to increase the prosecutorial risk to a defendant to force a defendant to relinquish an advantage gained by the exercise of the defendant's legal rights).

Harris further contends that having failed to prepare adequately for trial, the Commonwealth's action in seeking a nolle prosequi constituted a violation of his due process rights under the Fourteenth Amendment by providing the Commonwealth with an "'unlimited continuance' that circumvented [Harris'] right to a speedy trial." In essence, Harris is asserting that, even in the absence of an improper or vindictive motive, where the Commonwealth elects not to proceed with a prosecution because of a weakness in its ability to present its case, any

_____

[5]The record also reflects that the delay in obtaining the documents was caused in part by factors beyond the Commonwealth's direct ability to control.

12

subsequent attempt to prosecute the same charge should be treated as a continuation of the original prosecution. This contention is contrary to the well-established law of this Commonwealth concerning the effect of a nolle prosequi.

"Under Virginia procedure a nolle prosequi is a discontinuance which discharges the accused from liability on the indictment to which the nolle prosequi is entered." Miller v. Commonwealth, 217 Va. 929, 935, 234 S.E.2d 269, 273 (1977). A new indictment is a new charge, distinct from the original charge or indictment. "When an original indictment is supplanted by a second indictment, the terms contemplated by [Code § 19.2-243] are to be counted from the time of the second indictment." Brooks v. Peyton, 210 Va. 318, 322, 171 S.E.2d 243, 246 (1969); see also Miller, 217 Va. at 934, 234 S.E.2d at 273; Arnold, 18 Va. App. at 221-22, 443 S.E.2d at 185; Presley v. Commonwealth, 2 Va. App. 348, 350, 344 S.E.2d 195, 196 (1986).

The fact that a motion for nolle prosequi comes close in time to the running of a defendant's speedy trial period does not obviate the ultimate effect of that motion. Once the motion is granted, the defendant is released from custody or the terms of his bond and is at liberty. While this may provide the Commonwealth with an opportunity to gather more evidence, it does not amount to an "unlimited continuance" because the

13

defendant no longer suffers the consequences of being under indictment.

For these reasons, we find no merit to any of Harris' contentions in support of his claim that he was denied his statutory right to a speedy trial or that his due process rights were violated when the trial court granted the Commonwealth's motion for nolle prosequi.

We now consider Harris' contention that, even if the trial court did not err in granting the motion for nolle prosequi, he was nonetheless denied his right to a speedy trial as provided under the Sixth Amendment. In Barker v. Wingo, 407 U.S. 514 (1972), the United States Supreme Court listed four factors that are to be weighed in determining whether an accused has been deprived of his Sixth Amendment right to a speedy trial. These factors are the length of the delay, the reason for the delay, whether the defendant has asserted his right, and the prejudice to the accused from the delay. Id. at 530. The Court noted that prejudice to the defendant must be considered in the light of the interests the speedy trial right was designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a

14

defendant adequately to prepare his case skews the fairness of the entire system."  Id. at 532 (footnote omitted).

Addressing each of the factors identified in Barris,[6] Harris asserts that the delay caused by the nolle prosequi of the original indictment creates a presumption of prejudice since he was not brought to trial for the offenses charged in that indictment until approximately nineteen months after the original probable cause hearing in the general district court. This delay, he asserts, "was deliberate in that the Commonwealth had not prepared for the original trial."  Thus, while conceding that he was on a personal recognizance bond following his arrest in each instance, Harris contends that he "was kept in anxiety for more than nineteen (19) months."  Harris further contends that he was prejudiced by the delay because he was required to substitute new counsel and was otherwise subjected to the inherent prejudice of being kept under suspicion of having committed a crime.

The difficulty with all these contentions is that they fail to account for the effect of the nolle prosequi of the original indictment.  We have already determined that the trial court did not err in granting the motion for nolle prosequi.  As a result,

---

[6]It is not disputed that Harris asserted the right as required by the third factor.

15

Harris' claim for a violation of his constitutional right to a speedy trial relates only to the prosecution of the second indictment.[7] The record fails to disclose that the time it took to bring Harris to trial on the second indictment was occasioned by any factor other than the normal proceedings of the trial court, including Harris' own requests for discovery and pre-trial motions.

Nor does Harris point to any evidence in the record showing actual prejudice to his defense. Although Harris' original counsel left the employ of the firm Harris had retained for his defense, other members of that firm represented him throughout the proceedings. The aggressive nature of the defense they provided discloses no indication of any deficiency resulting from the change in lead counsel. Similarly, we find no support in the record of Harris' claim of generalized prejudice resulting from his being under indictment. Accordingly, we hold that the period between Harris' appearance to accept service of the second indictment and his subsequent conviction thereon did not constitute a violation of his constitutional right to a speedy trial under the Sixth Amendment.

---

[7]Harris concedes on brief that, taking into account his delay in accepting service of the indictment, his conviction on the second indictment occurred within the limits of Code § 19.2-243.

16

For the reasons stated, we will affirm the judgment of the Court of Appeals.

Affirmed.