COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Beales and Athey
Argued by videoconference

MICHAEL R. MOLLENHAUER

v.        Record No. 0826-20-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
CHIEF JUDGE MARLA GRAFF DECKER
JULY 6, 2021

FROM THE CIRCUIT COURT OF DINWIDDIE COUNTY
Paul W. Cella, Judge

> Richmond A. Wollstein (The Elliott Law Firm, on briefs), for
> appellant.
>
> Rachel L. Yates, Assistant Attorney General (Mark R. Herring,
> Attorney General, on briefs), for appellee.

Michael R. Mollenhauer appeals his conviction of child cruelty in violation of Code

§ 40.1-103. On appeal, he contends that the portion of the statute under which he was convicted

is unconstitutionally vague. We hold that the record does not establish good cause for the

appellant's failure to make a timely pre-trial challenge to the constitutionality of Code

§ 40.1-103. Consequently, we affirm the conviction without reaching the merits of his claim.[1]

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] To the extent that the wording of the appellant's single assignment of error could be
construed to include a sufficiency argument, we do not consider that issue. At the petition stage,
the appellant raised a separate assignment of error challenging the sufficiency of the evidence,
limited to whether it proved that the charged offense occurred during the time period alleged in
the indictment. That assignment of error was denied. See Mollenhauer v. Commonwealth, No.
0826-20-2 (Va. Ct. App. Dec. 7, 2020) (unpublished order). Additionally, the appellant's brief
addresses only the vagueness claim. See Rule 5A:20(e). Consequently, the only issue currently
before the Court is the constitutional one.

## I. BACKGROUND[2]

The victim, S.M., is one of four children of Robert Mollenhauer. In October 2016, when S.M. was three years old, Robert and his children began living with Robert's parents, Michael Mollenhauer (the appellant) and Christina Mollenhauer. The appellant and Christina helped Robert care for S.M. and her siblings.

In 2017 and again in 2018, different childcare and school officials contacted the Dinwiddie County Department of Social Services (DSS) due to concerns about S.M. Information gathered during the investigation that ensued was wide ranging. It revealed in part that the family restricted S.M.'s access to food and kept her locked in a cage-like enclosure at night.

The investigation further showed that the appellant built the cage-like enclosure in which S.M. slept at least five nights per week. The appellant and Christina "explain[ed] the necessity" for the cage to Robert. The appellant characterized the enclosure as a special-needs bed and said that he made it, instead of buying one, to save money.

On September 6, 2018, Donna Harrison, an investigator for DSS's Child Protective Services division (CPS), visited the Mollenhauer home. Harrison was permitted to see S.M.'s sleeping enclosure, which she described as "a cage" located "in a closet with a curtain." The base was the standard size for a crib, but it had been shortened and had a "top" made of "two by fours." The cage was "no more than . . . about three feet" tall and was shorter in height than S.M. It had slats and a door with a latching mechanism and contained "a mattress that didn't have any padding or covering." The cage also had "a drainage hole." Beneath it was a scrap of

---

[2] "Under well-settled principles of appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below." Camp v. Commonwealth, 68 Va. App. 694, 698 (2018) (quoting Smallwood v. Commonwealth, 278 Va. 625, 629 (2009)).

linoleum covered with baking soda, which Christina stated "was to [reduce] the smell from [S.M.] urinating and defecating on herself while in that area."

Both the appellant and Christina said that the enclosure was locked at night and that S.M. slept in it because of her bad behavior. They asserted that the cage was necessary to prevent S.M. from "steal[ing] food," getting "into the garbage" and "everything," and "bothering everybody."

Juxtaposed with the reports of S.M.'s family members that she was a "bad" child was information from teachers, daycare providers, and others that S.M. was sweet, smart, and well-behaved. They indicated that S.M. had occasional bowel and bladder control issues but described these as minor potty-training issues that improved over time.

As a result of Harrison's observations during the home visit, she immediately removed S.M. from the home. While S.M. was with Harrison, she was polite, pleasant, and able to go to the bathroom on her own.

A subsequent evaluation performed by Dr. Robin Foster, medical director of the child protection team for Virginia Commonwealth University Health Systems, concluded that S.M. suffered from a failure to thrive that resulted from the limitations placed on her food intake prior to the removal from the Mollenhauer home. Dr. Foster also concluded that S.M.'s history and medical records were "consistent with [a] medical diagnosis of child torture" because the evidence "m[et] all of the most common criteria" for that diagnosis. Foster noted that the child exhibited soft tissue injuries of a type inconsistent with those typically incurred by young children during play, was physically restrained and isolated by being kept in the enclosure, was socially isolated, and was deprived of food. Dr. Foster also pointed out that children undergoing physical and psychological trauma tend to "become very anxious," which sometimes causes symptoms of regression, including bedwetting and soiling themselves. She further noted based

on her team's examination of S.M. shortly after her removal, as well as during a later evaluation after she had been in foster care for eight months, that S.M. was not manifesting any behavior that would "warrant . . . restrain[ing her in a] . . . box."

Consistent with the evidence at trial as outlined above, the appellant and Christina were charged with child cruelty in violation of Code § 40.1-103.[3] The indictments tracked the language of Code § 40.1-103, which proscribes "caus[ing] or permit[ting]" any of three types of behavior toward a child in his or her custody. The two were tried jointly but were represented by different attorneys.

Neither the appellant nor Christina made a pre-trial motion challenging the constitutionality of any portion of Code § 40.1-103. During trial, they made motions to strike based on Commonwealth v. Carter, 21 Va. App. 150 (1995), noting that it held unconstitutionally vague the portion of Code § 40.1-103 prohibiting a child's custodian from allowing the child to be placed in a situation that "may" endanger his or her "life, health, [or] morals." Counsel did not argue that other portions of the statute were unconstitutional. The circuit court denied the motions to strike. In closing argument, the appellant's counsel made no additional reference to the constitutionality of the statute.

After hearing the evidence, the circuit court found both the appellant and Christina guilty of one count each of violating Code § 40.1-103. The judge reasoned that S.M.'s "sleeping enclosure" was not "a bona fide special-needs bed" and was instead a "pen or cage." He further noted evidence "that the child was kept locked in it at night and that both defendants knew that and permitted it" during the 2018 time frame set out in the indictment. In finding the appellant

---

[3] The behavior was alleged to have occurred in 2018. Both parties were charged with an additional count of violating Code § 40.1-103 based on events alleged to have occurred in 2017 and early 2018. The circuit court acquitted them of the earlier violations. It also acquitted them of two counts each of child abuse in violation of Code § 18.2-371.1.

and Christina guilty, the judge addressed the statute's "may" clause, again noting that this part of the statute had been held unconstitutional. The judge confirmed that the "rest of the statute," specifically the third part, which "deal[t] with caus[ing] or permit[ting the] child to be . . . tortured . . . or cruelly treated," remained valid. He further found that "having the child locked in th[e] pen [all] night me[t] th[e] criteria . . . of being tortured and cruelly treated."

Following trial, the appellant and Christina filed a joint written motion to set aside the verdict. The motion did not challenge the constitutionality of any portion of Code § 40.1-103. It raised only claims of "actual innocence" and "lack of evidence." The appellant noted that the statute did not define torture and argued that the Commonwealth's evidence did not meet the dictionary definition of the term. He further contended that the evidence did not prove a violation of Code § 40.1-103 in any other way, including through "cruel[] treat[ment]." On that basis, the appellant asked the court to set aside the verdict against him.

The appellant and Christina subsequently provided oral argument on their post-trial motions. At that hearing, for the first time, counsel for the appellant argued in part that the third clause of Code § 40.1-103 was unconstitutionally vague because it did not define "torture[d]" or "cruelly treated."

In denying the motions, the judge "acknowledge[d] . . . room for debate about th[e] statute" due to the lack of "statutory definitions of the term[s] torture[d and] . . . cruelly treated." He noted his "previous finding . . . that the fact that [S.M.] was kept in th[e] enclosure was sufficient to prove that [she] was tortured or cruelly treated." The judge indicated that he "st[ood] by that finding" and was "not prepared to declare the statute unconstitutional." Consequently, he denied the motions.

The court sentenced the appellant and Christina each to five years in prison and suspended both sentences conditioned upon five years of good behavior.

## II. ANALYSIS

The appellant contends that the terms "tortured" and "cruelly treated" as used in the third clause of Code § 40.1-103 are unconstitutionally vague because they are not defined by the statute. The Commonwealth asserts that the appellant is barred from challenging the constitutionality of the statute on appeal because he did not raise the issue in a timely fashion in the circuit court and no evidence establishes good cause to excuse the late challenge.[4]

Code § 19.2-266.2 specifically provides that a defendant seeking dismissal of a charge in a circuit court "on the ground that a statute upon which it was based is unconstitutional shall . . . rais[e that claim] by motion or objection" made "*in writing*." Code § 19.2-266.2(A)-(B) (emphasis added). The statute further requires that the motion or objection "shall be filed and notice given to opposing counsel *not later than seven days before trial*." Code § 19.2-266.2(B) (emphasis added); see also Rule 3A:9(b)-(c).

"These requirements are not superfluous administrative hurdles. [Instead, t]hey 'serve[] legitimate state interests in protecting against surprise, harassment, and undue delay." Bass v. Commonwealth, 70 Va. App. 522, 534 (2019) (second alteration in original) (quoting Arrington v. Commonwealth, 53 Va. App. 635, 640 (2009)). Additionally, the statute aids in preserving the Commonwealth's right to appeal certain rulings, such as those suppressing evidence or dismissing a charge on constitutional grounds. The Commonwealth has a right of appeal from such rulings only prior to trial. See Code § 19.2-398(E). Consequently, if a circuit court grants

---

[4] The fact that the Commonwealth did not assert a waiver argument based on Code § 19.2-266.2 in the circuit court does not prevent this Court from applying waiver principles on appeal. See Harris v. Commonwealth, 39 Va. App. 670, 675-76 (2003) (*en banc*) (applying Rule 3A:9 "good cause" waiver principles, analogous to those in Code § 19.2-266.2, and noting that the fact that the Commonwealth raised this specific argument for the first time on appeal was not a bar to its application because additional findings of fact were not required); see also Peters v. Commonwealth, 72 Va. App. 378, 388-89 (2020) (discussing that right-result-different-reason doctrine may support affirmance of a circuit court's ruling as long as additional findings of fact are not required).

such a motion after trial has begun, the Commonwealth no longer has a right to challenge that ruling on appeal, allowing potentially significant constitutional rulings to go unchecked by an appellate court. See Upchurch v. Commonwealth, 31 Va. App. 48, 53 (1999). Requiring that specified motions be made in advance of trial assists in safeguarding this right. Thus, absent the availability of an exception, "fail[ure] to meet these statutory requirements" for a pre-trial motion results in a "waive[r of the constitutional challenge] on appeal." Schmitt v. Commonwealth, 262 Va. 127, 145-46 (2001); see Morrison v. Commonwealth, 37 Va. App. 273, 279 (2002) (declining to address the defendant's claim that the statutes under which he was charged were unconstitutionally vague in part because he did not file a motion to dismiss prior to trial as required by Code § 19.2-266.2).

Code § 19.2-266.2 does contain an exception to the pre-trial timing requirement. It allows the circuit court to "permit the motion[] or objection[] to be raised at a later time" "for good cause shown and in the interest of justice." Code § 19.2-266.2(B); see also Rule 3A:9(d) (referring only to good cause). Whether "good cause" and the "interest of justice" existed under Code § 19.2-266.2(B) is a question committed to the sound discretion of the circuit court. See Upchurch, 31 Va. App. at 51-52. In reviewing such a determination on appeal, "[o]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred." Grattan v. Commonwealth, 278 Va. 602, 620 (2009) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, adopted upon reh'g en banc, 45 Va. App. 811 (2005)).

The appellant candidly concedes that "no evidence . . . specifically indicates . . . the trial court [found] that a late motion challenging the constitutional validity of Code [§] 40.1-103 would be permitted based upon 'good cause' and 'the interest of justice.'" Nevertheless, he argues that the fact that the circuit court permitted post-trial argument on the constitutionality of

the statute's definitions of "tortured" and "cruelly treated" "implicitly constitute[d] permission" for the motion "to be heard at a later time."[5]

Under other statutes that provide a good cause exception, Virginia's appellate courts have sometimes concluded that a finding of good cause was implicit in the circuit court's ruling. See Henderson v. Commonwealth, 285 Va. 318, 326-27 (2013); Harris v. Commonwealth, 258 Va. 576, 582-84 (1999); cf. Stephens v. Commonwealth, 274 Va. 157, 162 (2007) (holding that a finding of lack of good cause was implicit in the circuit court's ruling). In at least some of these contexts, the Supreme Court has held that if a finding of good cause is implicit, the appellate court will examine the record to determine if it supports an implicit finding of good cause. See Henderson, 285 Va. at 326-27; Harris, 258 Va. at 582-84.

We need not decide whether a circuit court's finding of good cause under Code § 19.2-266.2 can be implicit because even if it can be, the record here does not support a finding of good cause.[6] Although good cause is not defined in Code § 19.2-266.2, its meaning has been developed in case decisions interpreting the statute. For example, good cause for a late-filed

---

[5] The appellant did not assert in the circuit court that good cause justified his late motion. Generally, where a defendant does not allege that good cause excused his failure, he waives the right to make a late motion. See Epps v. Commonwealth, 293 Va. 403, 410 (2017) (holding under Rule 3A:9(d) that because the defendant did not object to the indictment until after sentencing and did not argue that good cause excused his failure to make the motion before trial, he waived the right to challenge the indictment). Nevertheless, we may assume without deciding that an issue was not waived in a particular manner if we determine that resolving the issue on a different basis provides the best and narrowest ground for resolution. See Podracky v. Commonwealth, 52 Va. App. 130, 134 (2008) (recognizing that "an appellate court may structure a decision on an 'assuming but not deciding' basis" to give effect to best and narrowest ground principles (quoting Luginbyhl v. Commonwealth, 48 Va. App. 58, 64 (2006) (*en banc*))). We apply that principle to our analysis in this case and examine whether the record supports a finding of good cause.

[6] We also assume without deciding that the circuit court was at liberty to excuse the statutory requirement that the motion be made in writing, despite the fact that the "good cause and . . . interest of justice" provision expressly applies only to the timing of the motion and not to the requirement that it be in writing. See Code § 19.2-266.2(B). But see Rule 3A:9(b)(3) (permitting a circuit court to waive the writing requirement for good cause).

motion may exist under Code § 19.2-266.2 where a change in the law occurs. See Freeman v. Commonwealth, 14 Va. App. 126, 128 (1992), overruled in part on other grounds by United States v. Dixon, 509 U.S. 688, 712 (1993). Good cause for a late motion may also be found where testimony at trial constitutes a surprise. See Upchurch, 31 Va. App. at 51-52. However, a lack of diligence or mere inadvertence does *not* establish good cause. See id. (holding that the evidence supported a finding of lack of diligence); see also United States v. Forrester, 60 F.3d 52, 59 (2d Cir. 1995) (holding under a similar federal rule requiring "cause" for the late filing of pre-trial motions that "[i]nadvertence by counsel . . . does not constitute cause" (citing former Fed. R. Crim. P. 12(f))).

In this case, the appellant does not assert that good cause justified his late motion.[7] Additionally, the fact that a portion of the statute had already been declared unconstitutionally vague in Carter, 21 Va. App. at 154-55, was information to which he had access between the time of issuance of the relevant indictment in late 2018 and his trial in mid-2019.[8] This information at least suggested that another portion of the statute might also be vulnerable to constitutional attack. Further, Code § 19.2-266.2(C) specifically provides that a defendant may ask the court to order a bill of particulars and any necessary supplementation "[t]o assist the defense in filing such [*pre-trial*] motions or objections in a timely manner." The appellant could

---

[7] This Court, in fact, ordered supplemental briefing on the issue, asking the parties to address whether the circuit court determined "that 'good cause' and 'the interest of justice' permitted it to consider the post-trial motion" and, if so, "*whether the record supports that conclusion*." Mollenhauer v. Commonwealth, No. 0826-20-2 (Va. Ct. App. Apr. 6, 2021) (unpublished order) (emphasis added). In response to the latter question, the appellant argued only that the prosecutor waived the issue. He did not assert any basis in the record purporting to establish good cause.

[8] The indictment tracks all of the language in Code § 40.1-103, including the method of proving a violation of the statute that was held unconstitutionally vague in Carter, 21 Va. App. at 154-55. The appellant raised this issue at trial, and the court convicted the appellant under a different part of the statute.

have asked for a bill of particulars and then lodged his vagueness challenge prior to trial rather than waiting until after conviction when he made argument on the post-trial motion. Here, the record simply does not support a finding of good cause to excuse the failure to raise the constitutional challenge pre-trial.

Because the record does not support the conclusion that good cause existed for the late motion, we do not consider whether the appellant met the second prong of the test. The statute's two prongs are phrased in the conjunctive, requiring both good cause *and* the interest of justice. See Code § 19.2-266.2(B). Since proof of one is lacking, we do not address the other. See O'Donoghue v. United Cont'l Holdings, Inc., 70 Va. App. 95, 107 n.6 (2019); cf. Pittman v. Commonwealth, 69 Va. App. 632, 636-37 (2019) (holding that where the evidence proves the violation of a statute under one of two alternative theories, best and narrowest ground principles prevent the appellate court from examining the proof related to the other theory).

## III. CONCLUSION

Assuming without deciding that the circuit court implicitly found good cause for the appellant's late motion challenging the portion of the statute under which he was convicted as unconstitutionally vague, the record does not support a finding of good cause sufficient to excuse the late motion. Consequently, we affirm the appellant's conviction without considering the merits of his challenge to the constitutionality of the statute.

Affirmed.