COURT OF APPEALS OF VIRGINIA

Present:    Judges Russell, AtLee and Senior Judge Haley
Argued by videoconference

UNPUBLISHED

KIMBERLY MAYHEW BARKSDALE

MEMORANDUM OPINION[*] BY

v.      Record No. 0736-20-3      JUDGE WESLEY G. RUSSELL, JR.
                                  JULY 20, 2021

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF CAMPBELL COUNTY
John T. Cook, Judge

George W. Nolley for appellant.

Lauren C. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Kimberly Mayhew Barksdale was convicted by a jury of her peers of murdering her

husband and the use of a firearm in the commission of that murder. On appeal, she asserts that her

speedy trial rights were violated in the proceedings below, and therefore, the trial court erred in

refusing to dismiss the indictments. Furthermore, she contends that the trial court abused its

discretion in granting the Commonwealth's motion to *nolle prosequi* the initial murder charge.[1]

Finally, she contends that the trial court erred in denying a motion filed by her trial counsel for

leave to present evidence at trial of her insanity at the time of the offenses. Finding no error, we

affirm the judgment of the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] After the *nolle prosequi*, Barksdale was reindicted for the murder and the murder
conviction arose out of that second indictment.

BACKGROUND[2]

Because the Commonwealth was the prevailing party below, we "view the record in the light most favorable to the Commonwealth[,]" granting it any inferences that flow from that view. Delp v. Commonwealth, 72 Va. App. 227, 230 (2020).

On June 5, 2017, the Campbell County Juvenile and Domestic Relations District Court certified to the grand jury a charge of murder against Barksdale for the killing of her husband.[3] On June 12, 2017, Barksdale, by counsel, filed a notice of intent to present an insanity defense in response to the charge. The grand jury subsequently indicted Barksdale for the murder charge and a second charge of use of a firearm in the commission of a felony on July 10, 2017. Upon joint motion of the parties, the "matter" was continued from the date of the indictment until July 27, 2017, for arraignment and for the purpose of setting a trial date.

Between July 26, 2017 and August 7, 2017, Barksdale filed motions for the appointment of a special prosecutor, for a new judge, and for a change of venue. Rather than conduct the scheduled July 27, 2017 hearing, the trial court considered the motions and denied them without a hearing. On August 10, 2017, the trial court entered an order continuing the matter to a date certain for the purpose of selecting a trial date.[4] On August 29, 2017, the matter was set for a jury trial to commence on October 31, 2017.

---

[2] The issues in this appeal are largely procedural and do not involve a challenge to the sufficiency of the evidence to establish that Barksdale committed the offenses for which she was convicted. Accordingly, we recite the procedural history that is relevant to the issues raised in this appeal and do not set out the facts relied upon by the Commonwealth to demonstrate Barksdale's guilt.

[3] Barksdale was in custody at the time the charge was certified and remained so throughout the proceedings.

[4] The August 10, 2017 order sets an August 30, 2017 hearing for the selection of a trial date. A subsequent order indicates that the hearing in which the initial trial date was selected occurred on August 29, 2017.

On September 20, 2017, Barksdale requested that the trial court continue the October 31, 2017 trial date. With no objection from the Commonwealth, the trial court granted Barksdale's motion for a continuance, vacated the October 31st trial date, and continued the matter to November 13, 2017 so that a new trial date could be selected.

In an order entered on November 15, 2017, the trial court, as a result of the agreement of the parties, set the matter for a jury trial to commence on May 3, 2018. The order, which is endorsed by counsel, expressly waives Barksdale's "speedy trial rights under § 19.2-243 or any other applicable provisions of the Code of Virginia for the period of time covered by this order."

In April 2018, Barksdale once again sought to continue the trial date. By order entered on April 17, 2018, the trial court granted Barksdale's motion over the objection of the Commonwealth. In the April 17, 2018 order, the trial court set a May date by which the parties were to select a new trial date.

On May 4, 2018, the trial court entered an order continuing the matter to the newly selected trial date of January 9, 2019. The order expressly notes that, by counsel, Barksdale "agree[d] to waive speedy trial pursuant to § 19.2-243 or any other applicable provisions of the Code of Virginia for the period of time covered by this order."

In November 2018, Barksdale sought to be allowed to represent herself and raised the possibility of withdrawing her previously noticed insanity defense. Finding it appropriate to do so, the trial court granted Barksdale's request to waive her right to counsel and to proceed *pro se*. The trial court appointed her then trial counsel, Jim Childress, to serve as standby counsel. The trial court also gave Barksdale a deadline by which to notify the Commonwealth whether she intended to withdraw her previously noticed insanity defense. On November 28, 2018, and within the time frame set by the trial court, Barksdale informed the trial court and counsel that she was

"withdraw[ing her] insanity defense[,]" was tendering an ordinary plea of "not guilty[,]" and was pursuing a defense based upon theories of "self-defense" and "defense of others[.]"

After Barksdale's November 28, 2018 notice, both parties filed numerous motions in advance of the jury trial then scheduled for January 9, 2019. Barksdale, acting *pro se*, moved to suppress certain evidence, to recuse the trial judge, to recuse the Commonwealth's Attorney, and for a change of venue.

Because of the motions filed and the change in the defense asserted by Barksdale, the Commonwealth sought to continue the trial from January 9, 2019. In support of its motion for a continuance, the Commonwealth noted its "reasonable reliance" on Barksdale's insanity defense notice and that, given the change in defense, certain evidence required forensic examination that had not previously required same. The Commonwealth also argued that, given the motions she had filed and the arguments made to support them, it appeared that Barksdale was planning to "now . . . claim that [the Commonwealth] cannot prove she shot her husband[,]" which the Commonwealth argued "completely changed the strategy and required evidence" from what was needed when Barksdale was relying on an insanity defense.[5]

The trial court denied Barksdale's various motions and granted the Commonwealth's motion for a continuance of the January 9, 2019 trial date. Although the written order does not reflect it, the Commonwealth conceded at a subsequent hearing that Barksdale objected to the Commonwealth's request for a continuance.

At a subsequent hearing, the trial date was set for March 27, 2019. In the interim, the parties continued to file various motions. Ultimately, the Commonwealth moved to *nolle*

---

[5] Although maintaining that it should not affect the analysis under the facts of this case, Barksdale's appellate counsel, with commendable candor, conceded at oral argument in this Court that trying a case in which the defendant disputes having committed the killing or asserts self-defense as a justification represents a very different case from one in which the defendant pleads not guilty by reason of insanity.

*prosequi* the murder indictment because of its concern that it may face a speedy trial argument from Barksdale.[6] Barksdale objected to the Commonwealth's motion seeking a *nolle prosequi* on speedy trial and due process grounds. The trial court granted the Commonwealth's motion seeking to *nolle prosequi* the murder charge,[7] and the Commonwealth subsequently reindicted her on the murder charge.

After reindictment, the parties continued to file motions regarding the case, including a motion filed by Barksdale to dismiss the indictments against her based on alleged violations of her speedy trial and due process rights.[8] At a March 14, 2019 hearing, the trial court concluded that Barksdale's speedy trial rights had not been violated and denied her motion to dismiss the indictments.

The parties continued to engage in extensive motions practice with a hearing on various motions occurring on March 21, 2019. At that hearing, the parties engaged in a colloquy with the trial court regarding the difficulties that Barksdale was encountering in representing herself. The Commonwealth informed the trial court that, based on its conversations with Barksdale, she was willing to waive speedy trial and forego representing herself if the trial court would appoint two attorneys to represent her. In a series of questions, the trial court confirmed with Barksdale that she agreed to waive speedy trial and forego representing herself so long as the court appointed two lawyers to represent her.

---

[6] The Commonwealth always has maintained that the March 27, 2019 trial date was within the speedy trial period and that it sought the *nolle prosequi* out of an abundance of caution.

[7] Barksdale remained in custody on the firearms charge.

[8] With the consent of the parties, all prior motions filed or pending and all prior rulings in the case stemming from the initial murder indictment were adopted in the case stemming from the second murder indictment.

The trial court agreed to the proposal and immediately elevated Childress from his role as standby counsel to counsel of record. Subsequently, the trial court appointed E. Gordon Peters as Barksdale's second attorney. The order appointing Peters also continued the matter to a date certain, when a new trial date was to be selected. The order also noted that Barksdale had agreed to waive her statutory speedy trial rights for the relevant time period.

On July 15, 2019, the trial court entered an order setting January 8, 2020 as the new trial date. The order reflects that continuing the matter to that date was done as a result of a joint "motion of the defendant and the Commonwealth[.]" The order further provides that Barksdale "agree[d] to waive [her] speedy trial rights under § 19.2-243 or any other applicable provisions of the Code of Virginia for the period of time" from January 9, 2019 through January 8, 2020. The order is endorsed "[w]e ask for and agree to this" by the Commonwealth and both of Barksdale's attorneys.

On November 21, 2019, Barksdale's counsel filed a notice of counsel's intent to present evidence of insanity. The Commonwealth objected, noting that the notice had not been provided at least sixty days before trial as required by Code § 19.2-168. At the hearing on the issue, Barksdale's counsel acknowledged that Barksdale did not wish to pursue an insanity defense, but that her counsel thought it was in her best interests to do so. Counsel also argued that the Commonwealth would not be prejudiced if the trial court allowed her to present an insanity defense because it previously had prepared for such a trial prior to Barksdale withdrawing her insanity defense a year earlier. The Commonwealth countered that the jury trial was in forty-eight days and that the intervening time period spanned the Thanksgiving and Christmas holidays. The Commonwealth noted that, if the defense were allowed, it would need time to speak with and prepare its expert witnesses to address an insanity defense, which might not be possible given the failure of the defense to provide timely notice. Furthermore, the

- 6 -

Commonwealth argued that, given all of the underlying circumstances, a continuance would prejudice the Commonwealth.

After taking the matter under advisement, the trial court agreed with the Commonwealth and precluded evidence of insanity from being presented. From the bench, the trial court explained that it based its decision on the fact that the notice was not timely filed, the fact that the Commonwealth would be prejudiced if forced to address the change in strategy at the last minute, and its conclusion that a continuance was "not a good answer" given all that had transpired previously.

The trial commenced as scheduled on January 8, 2020. The jury returned verdicts of guilty on both charges. The trial court accepted the verdicts and entered judgment upon them from which Barksdale now appeals.[9]

Specifically, Barksdale argues that the various delays in the proceeding below constituted a violation of her speedy trial rights, and therefore, the trial court erred in refusing to dismiss the indictments. In a related assignment of error, she contends that the trial court abused its discretion in granting the Commonwealth's motion to *nolle prosequi* the initial murder charge. Finally, she contends that the trial court erred in denying a motion filed by her trial counsel for leave to present evidence at trial of her insanity at the time of the offenses. We address these contentions below.

ANALYSIS

I. Standard of review

In evaluating Barksdale's speedy trial claim, we "give deference to the trial court's findings of fact, but review the trial court's 'statutory interpretations and legal conclusions *de novo.*'" Brown v. Commonwealth, 57 Va. App. 381, 390 (2010) (quoting Sink v. Commonwealth, 28 Va. App. 655, 658 (1998)). The analysis requires that we "review . . . the

_____

[9] Yet another attorney, George Nolley, was appointed to represent Barksdale on appeal.

whole record and . . . consider[] the trial court orders in the context of the record" in its entirety. Id. at 389-90 (quoting Baity v. Commonwealth, 16 Va. App. 497, 503 (1993) (*en banc*)).

In challenging the trial court's decision to grant the Commonwealth's motion to *nolle prosequi* the initial murder indictment, Barksdale attacks a decision that is committed "to the discretion of the trial court." Harris v. Commonwealth, 258 Va. 576, 583 (1999); see also Code § 19.2-265.3. Accordingly, such claims are reviewed under the deferential abuse of discretion standard.

Similarly, Code § 19.2-168, which imposes on a defendant a duty to provide timely notice to the Commonwealth of his or her intent to present evidence of insanity, provides that, if a defendant fails to comply with the notice requirement, "the [trial] court may *in its discretion*, either allow the Commonwealth a continuance or, under appropriate circumstances, bar the defendant from presenting such evidence." (Emphasis added). Accordingly, we review Barksdale's challenge to the trial court's decision to bar her from adducing evidence of insanity under the deferential abuse of discretion standard.

## II. Speedy trial and the *nolle prosequi*

In two assignments of error, Barksdale contends that her statutory speedy trial rights were violated, and thus, the trial court erred in failing to dismiss the murder and use of a firearm in the commission of a murder indictments. In a third assignment of error, she contends that the trial court abused its discretion in granting the Commonwealth's motion to *nolle prosequi* the initial murder indictment because the motion was undertaken to deprive Barksdale of her speedy trial rights.[10]

---

[10] Virginia law is clear that, if granting the motion for a *nolle prosequi* were appropriate, the speedy trial period on the murder charge stopped and began to run from day one once the new indictment was obtained. See Harris, 258 Va. at 585 ("A new indictment is a new charge, distinct from the original charge or indictment. 'When an original indictment is supplanted by a second indictment, the terms contemplated by [Code § 19.2-243] are to be counted from the time

- 8 -

At oral argument in this Court, Barksdale conceded that the assignments of error were intertwined and that, if there were no statutory speedy trial violation, there was no reversible error regarding the granting of the motion for *nolle prosequi*. Given this linkage and our mandate to resolve cases on the "best and narrowest grounds available[,]" Delp, 72 Va. App. at 235 n.4 (quoting Commonwealth v. Swann, 290 Va. 194, 196 (2015)), we turn to Barksdale's statutory speedy trial claim as it relates to the first murder indictment.

Relied upon by Barksdale, Code § 19.2-243 is commonly referred to as Virginia's speedy trial statute. In pertinent part, it provides that

> [w]here a district court has found that there is probable cause to believe that an adult has committed a felony, the accused, if he is held continuously in custody thereafter, shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months from the date such probable cause was found by the district court[.]

The five-month period referenced in the statute "translat[es] to '152 and a fraction days.'" Herrington v. Commonwealth, 291 Va. 181, 186 n.6 (2016) (quoting Ballance v. Commonwealth, 21 Va. App. 1, 6 (1995)).

The 152 and a fraction days period, however, is not absolute and is subject to being tolled for multiple reasons, many of which are delineated in Code § 19.2-243. See Adkins v. Commonwealth, 13 Va. App. 519, 521 (1992) (recognizing that Code § 19.2-243 specifies circumstances in which the five-month period is extended and that "[t]he specified reasons for excusable delay listed in the statute are not exclusive; other similar circumstances may excuse delay in trying the accused within the designated time"). Of particular note here, Code § 19.2-243(4) provides, in pertinent part, that any delay in trial caused

> [b]y continuance granted on the motion of the accused or his counsel, or by concurrence of the accused or his counsel in such a

---

of the second indictment.'" (alteration in original) (quoting Brooks v. Peyton, 210 Va. 318, 322 (1969))).

- 9 -

> motion by the attorney for the Commonwealth, or by the failure of the accused or his counsel to make a timely objection to such a motion by the attorney for the Commonwealth . . .

tolls the speedy trial clock and does not count against the "152 and a fraction days" in which a defendant must be tried.

Regarding the initial murder indictment, the district court found probable cause to exist on June 5, 2017. Accordingly, the speedy trial clock for the initial murder charge began running on that day. Because Barksdale remained in custody the entire time, the Commonwealth had, subject to any periods of tolling, five months from June 5, 2017 to try Barksdale on that charge.

On July 10, 2017, the grand jury returned indictments on the murder charge and returned an additional indictment on the charge for use of a firearm in the commission of a felony. Because this represented the initial probable cause determination on the use of a firearm charge, the speedy trial clock on that charge began running on that date.[11]

The next scheduled event was a hearing set for July 26, 2017, at which the parties were to select a trial date. That hearing was continued on the joint motion of the parties. The joint continuance of the scheduling date, however, did not toll the speedy trial clock because an initial trial date had yet to be selected. Turner v. Commonwealth, 68 Va. App. 72, 81 n.4 (2017) (recognizing that when "no trial date had ever been set, Code § 19.2-243(4), which requires a defendant to affirmatively object to a *continuance* requested by the Commonwealth, does not apply to toll the running of the speedy trial clock"). Accordingly, the speedy trial time period continued to run unabated.

---

[11] Because the speedy trial period on the use of a firearm charge began running more than a month after the speedy trial period began running on the initial murder charge, a trial on the use of a firearm charge is, by definition, timely if a trial on the initial murder charge is or would have been timely. Given our ultimate conclusion that a trial on the initial murder indictment would have been timely, we do not need to conduct a separate speedy trial analysis for the use of a firearm charge.

On August 29, 2017, the matter was set for a jury trial to commence on October 31, 2017. The scheduled Halloween trial date was 148 days after the district court found probable cause, and thus, was within the speedy trial period. If the matter had been tried as scheduled, there would have been no speedy trial issue.

Of course, trial did not take place on October 31, 2017 as scheduled. Critical to the speedy trial analysis is that the scheduled trial did not take place because *Barksdale* requested that the trial date be continued. Specifically, on September 20, 2017, she requested and was granted a continuance of the trial date. Because the continuance was requested by Barksdale, the speedy trial clock was tolled as of September 20, 2017, see Code § 19.2-243(4), a period of 107 days after the initial probable cause determination. Given that the trial was continued at Barksdale's request, the speedy trial clock, absent intervening circumstances, would have remained tolled until the rescheduled November 13, 2017 trial date.

Circumstances did intervene. Trial did not occur on November 13, 2017 because the parties requested and were granted numerous continuances and multiple trial dates were set, culminating in a January 9, 2019 trial date being selected. Because all of the continuance orders entered between November 2017 and January 2019 reflect that the continuances were requested by Barksdale, were the result of a joint motion, and/or that Barksdale waived speedy trial for the period of the continuance, the speedy trial clock regarding the initial murder charge remained tolled at 107 days.

In November 2018, Barksdale elected to represent herself and withdrew the insanity claim upon which her defense had rested since June 12, 2017. Given the significant change in the focus of the case, the Commonwealth sought a continuance of the January 9, 2019 trial date, which the trial court granted on January 4, 2019 over Barksdale's objection.

Barksdale contends that, because the January 9, 2019 trial date was continued over her objection, the speedy trial clock began to run again as of the date of the continuance. The

Commonwealth counters that, because the continuance was necessitated by the numerous motions filed and the withdrawal of the insanity defense by Barksdale, the continuance should be charged to her despite her objection.  See, e.g., Turner, 68 Va. App. at 79 (recognizing that a continuance necessitated by conduct of the defendant, such as filing complex, last-minute motions, is not chargeable to the Commonwealth); Stephens v. Commonwealth, 225 Va. 224, 233-34 (1983).

Given subsequent events, we need not and do not resolve this dispute.[12]  The July 15, 2019 order setting January 8, 2020 as the trial date expressly reflects that continuing the matter to that date was done as a result of a joint "motion of the defendant and the Commonwealth[.]"  The order further provides that Barksdale "agree[d] to waive [her] speedy trial rights under § 19.2-243 or any other applicable provisions of the Code of Virginia for the period of time" from January 9, 2019 through January 8, 2020.  Thus, even if we were to determine that the continuance caused by Barksdale's change in strategy otherwise would be charged to the Commonwealth, only the period between the granting of the continuance on January 4, 2019 until the January 9, 2019 date referenced in the order, could be charged to the Commonwealth.  Adding those few days to the 107 days that already had run still left well over a month in which the Commonwealth could timely commence trial on the original murder indictment.

The conclusion that the January 8, 2020 trial commenced within the speedy trial time period even if that period was calculated from the initial finding of probable cause that led to the initial murder indictment resolves much of Barksdale's appeal.  Because the speedy trial clock began running on the use of the firearm charge after the finding of probable cause that led to the

---

[12] As noted above, our mandate is to resolve cases on the "best and narrowest grounds available."  Delp, 72 Va. App. at 235 n.4 (quoting Swann, 290 Va. at 196).  Accordingly, we do not address the Commonwealth's arguments that the continuance is attributable to Barksdale because it was necessitated by her eleventh-hour change in strategy or its contention that, pursuant to Harris, 258 Va. at 585, the speedy trial analysis on the murder charge only runs from the second indictment because of the granting of the motion to nolle prosequi the initial indictment.

initial murder indictment, it is beyond dispute that the trial on the use of the firearm charge was commenced timely.

Barksdale's challenge to the granting of the motion to *nolle prosequi* the initial murder indictment is also resolved by this conclusion. After all, the premise of Barksdale's challenge, that the Commonwealth obtained the *nolle prosequi* to avoid its speedy trial obligations, is not merited because the trial was timely regardless. Even Barksdale recognizes that this is so, conceding at oral argument in this Court that, if there were no statutory speedy trial violation, there was no reversible error regarding the granting of the motion for *nolle prosequi*. Accordingly, the trial court did not err in refusing to dismiss the indictments or in granting the motion to *nolle prosequi*.

### III. Notice of insanity evidence

In her remaining assignment of error, Barksdale argues that the trial court abused its discretion in ruling that she was barred from introducing evidence at trial of her alleged insanity at the time of the offense.[13] We disagree.

A defendant who wishes to introduce evidence of insanity at the time of the offense must file a notice in compliance with Code § 19.2-168. That section provides, in pertinent part, that

> [i]n any case in which a person charged with a crime intends (i) to put in issue his sanity at the time of the crime charged and (ii) to present testimony of an expert to support his claim on this issue at his trial, he, or his counsel, shall give notice in writing to the attorney for the Commonwealth, at least 60 days prior to his trial, of his intention to present such evidence. . . . In the event that such notice is not given, and the person proffers such evidence at his trial as a defense, then the [trial] court may in its discretion, either allow the Commonwealth a continuance or, under appropriate circumstances, bar the defendant from presenting such evidence.

---

[13] In both the trial court and on appeal, Barksdale's challenge to the trial court's ruling barring evidence of insanity presumes that any evidence of insanity she sought to offer required compliance with Code § 19.2-168's notice requirement. Given the question before us, all references in this opinion to evidence of insanity shares that premise—that all evidence of insanity sought to be offered was subject to the notice provision of Code § 19.2-168.

Because the statute expressly grants a trial court the discretion to "bar the defendant from presenting . . . evidence" of insanity if the defendant fails to comply with the statute's notice requirement, we review the trial court's refusal to allow Barksdale to present such evidence at trial under the deferential abuse of discretion standard.

The abuse of discretion standard "rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." Hamad v. Hamad, 61 Va. App. 593, 607 (2013). It presumes that "for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable." Thomas v. Commonwealth, 62 Va. App. 104, 111 (2013). Accordingly, we must "show enough deference to a primary decisionmaker's judgment that [we do] not reverse merely because [we] would have come to a different result in the first instance." Lawlor v. Commonwealth, 285 Va. 187, 212 (2013) (quoting Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 322 (4th Cir. 2008)). Under this standard, "we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action." Grattan v. Commonwealth, 278 Va. 602, 620 (2009) (quoting Beck v. Commonwealth, 253 Va. 373, 385 (1997)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Thomas v. Commonwealth, 44 Va. App. 741, 753, adopted upon reh'g en banc, 45 Va. App. 811 (2005). Viewed through this lens, it is clear that the trial court did not err in refusing to allow Barksdale to adduce evidence of insanity at trial. Although Barksdale's counsel initially filed notice of *his* intention to introduce insanity evidence on June 12, 2017, that notice was withdrawn and repudiated by Barksdale in November 2018 when she began representing herself and formally withdrew the insanity defense. During the multitude of motions and other occurrences over nearly a year, the defense consistently maintained this position, never suggesting that it desired to put on evidence of insanity. This

position was maintained while Barksdale was representing herself, after Childress resumed his duties as counsel, and for months after Peters was appointed to serve as co-counsel.

Only in November 2019, a mere forty-eight days before trial, did Barksdale's counsel again raise *his* desire to present evidence of insanity.[14] Faced with the untimely notice which sought, yet again, to radically alter the trial at the eleventh hour, the trial court conducted a hearing and reviewed the options available to it under Code § 19.2-168.

Given that even Barksdale concedes that a case in which a defendant argues that he or she is not guilty by reason of insanity is a very "different" case from one in which other defenses are presented, the trial court reasonably concluded that it would not be appropriate to simply allow Barksdale to introduce such evidence at the January 8, 2020 trial.[15] Similarly, given the history of the case, the trial court reasonably rejected continuing the matter yet again to allow the Commonwealth to prepare for the defense's change in strategy. After all, the offense had occurred in 2016 and the matter had been continued multiple times at the request of Barksdale or arguably as a result of her prior radical change in defense strategy. Given the time elapsed and this history, the trial court reasonably concluded that it was inappropriate to continue the matter yet again to accommodate yet another shift in defense strategy.

The trial court's decision to reject counsel's late request to introduce evidence of insanity is further supported by the fact that it was *counsel* and not *Barksdale* who wished to do so. As both Barksdale and her counsel made clear when the issue was raised, Barksdale objected to any

---

[14] On appeal, Barksdale does not challenge the trial court's finding that the notice was untimely; rather, she contends that the trial court should have allowed her to present such evidence despite her failure to file a timely notice.

[15] The differences include the preparation and calling of expert witnesses to address the issue raised by the insanity evidence. Scheduling trial appearances by and preparing such experts cannot be done at the drop of a hat. Accordingly, the fact that the Commonwealth may have been prepared to try such a case in November 2018 before Barksdale withdrew the defense does not mitigate the failure to provide a timely notice for a trial in January 2020.

attempt to claim that she was insane at the time of the offenses.  Her rejection of this defense strategy was consistent and particularly salient given that she not only was competent to stand trial, but also had been found competent to represent herself and had done so for an extended period of time.  Given the totality of the circumstances, the trial court's decision to bar the evidence given the failure to comply with Code § 19.2-168 was a reasonable one, and therefore, the trial court did not abuse its discretion in prohibiting such evidence.

## CONCLUSION

For the foregoing reasons, we conclude that the trial court did not err in refusing to dismiss the indictments, in granting the motion to *nolle prosequi* the initial murder indictment, or in refusing to allow Barksdale to introduce evidence of insanity at trial.  Accordingly, the judgment of the trial court is affirmed.

<u>Affirmed.</u>