# Richmond.

HARRISON JONES v. COMMONWEALTH.

MARCH 27th, 1890.

Absent—Richardson, J.

1. CRIMINAL PROCEEDINGS—*Robbery—Once in jeopardy*—At a trial for robbery, the court, without prisoner's consent, discharged the jury that was unable to agree. On subsequent trial he plead " former jeopardy." HELD : The facts do not sustain the plea.
2. IDEM—*Res gestæ.*—At such trial prisoner's declarations made quarter of a mile distant from the scene of robbery and ten minutes after its occurrence, *held*, inadmissible as part of *res gestæ.*

Error to judgment of circuit court of Brunswick county rendered October 12, 1889, affirming judgment of county court of said county, sentencing Harrison Jones, the plaintiff in error, to ten years confinement in the penitentiary for the robbery of Mansfield Moore. Opinion states the case.

*E. P. Buford,* for the plaintiff in error.

*Attorney-General R. Taylor Scott,* for the commonwealth.

FAUNTLEROY, J., delivered the opinion of the court.

The plaintiff in error was jointly indicted with one James Wheeler at the August term, 1889, of the county court of Brunswick county, for the robbery of Mansfield Moore, in the

county of Brunswick, on the night of July 11th, 1889. At the said August term of the said court the said Harrison Jones was arraigned, and, having elected to be tried separately, he pleaded "Not guilty," and he was thereupon put upon his trial on the said indictment on the 27th of August, 1889. The trial proceeded regularly, and at 3 o'clock P. M. of the day following, the case was submitted to the jury. At 7 o'clock P. M. of that day, the jury having failed to agree upon a verdict, was discharged by the court. At the September term of the said county court the prisoner was again put upon his trial upon the said indictment. And thereupon he filed a special plea, setting forth that in consequence of the proceedings had and taken against him on the said indictment at the said August term, he had been put in jeopardy for the offense charged against him in said indictment, and that he could not be again tried for the said offense. To which special plea the attorney for the commonwealth filed a demurrer, which the court sustained; and the trial was proceeded with upon the issue already joined upon the plea of "Not guilty," and the jury found the prisoner guilty and fixed the term of his confinement in the penitentiary at ten years; and the court sentenced the prisoner in accordance with the verdict. During the progress of the trial the prisoner filed several bills of exceptions to the rulings of the county court; and having obtained from the circuit court of Brunswick county, on the 12th day of October, 1889, a writ of error and *supersedeas* to the said judgment of the county court, the circuit court affirmed the said judgment. The case is here by a writ of error to the said judgment of the circuit court.

The errors assigned are: 1. "The court erred in sustaining the demurrer to the special plea of the prisoner, filed at the September term, 1889, of the county court." This plea set up as defence the fact that the jury, failing to agree, was discharged without the prisoner's consent and against his protest.

There is nothing in the record to show that the prisoner

objected to the discharge of the jury, which discharge was the exercise of judicial discretion conferred upon the court by section 4026, Code of Virginia 1887; and there is nothing in the record to cast a suspicion of the trial judge's fairness and integrity in the proceedings. The statute says: " In any criminal case the court may discharge the jury when it appears that they cannot agree in a verdict or that there is a manifest necessity for such discharge."

*Wright's case,* 75 Va., is an adjudication of this statute; and in that case, reviewing the cases of *Williams* v. *Commonwealth,* 2 Gratt., and *Dye's case,* 7 Gratt., Judge Christian, speaking for this court, says: " There can be no question, therefore, of the power of the court, when it became satisfied that the jury could not agree, to withdraw a juror without any consent on the part of the prisoner, and to discharge the jury and continue the case." We think that the court did not err in sustaining the demurrer to the plea, and that this assignment of error is not well taken.

The second assignment of error is to the ruling of the court allowing Armistead Chavis to testify to the jury statements made by the prosecutor, Mansfield Moore, on his arrival at the house of said Chavis on the night of July 11th, 1889, after the alleged robbery of the said Moore, as evidence to sustain the issue on the part of the commonwealth. To which introduction the prisoner objected, as set forth in his bill of exceptions No. 1.

In the statement of facts certified, it appears, " after the robbery of Moore as aforesaid, the persons so identified as the prisoner, and Harrison Jones went back in the direction of the gate Moore had just passed through. As they went off, Moore said to them: 'God damn you, I know you, and I intend to have you in jail before morning.'" "Moore, after being robbed, went directly to the residence of Armistead Chavis, who had retired for the night, and who resides about three hundred yards from the scene of the robbery. He was aroused

by some one calling loudly, 'Mr. Chavis! Mr. Chavis! help me, help me.' He immediately got out of bed and went into his yard, where he saw Moore coming in a run, bleeding from the wound at his right eye, his clothes besmeared with blood, very much excited and in a 'pitiful' condition. Chavis inquired of him 'What is the matter?' to which Moore replied that he had been knocked down and robbed by James Wheeler and the prisoner. This was within ten minutes after the occurrence of the robbery."

This statement is inadmissible, as a complaint made by the prosecutor recently after the outrage had been perpetrated, the crime of robbery not being within the exception to the rule of law which forbids the admission of hearsay evidence. But the attorney-general argues, and the circuit court decided, that this statement of Moore to Chavis was admissible evidence as part of the *res gestæ*.

Wharton's Criminal Evidence, 9th edition, section 26, says: "As soon as we pass the line which distinguishes between the transaction talking of itself, and talking as modifying the transaction—in other words, as soon as we pass the line between the time of the transaction and the time that follows it, we have no limits that can be imposed. If we are to receive declarations made ten minutes after a transaction, we must receive declarations made ten years afterwards. The impulses of anger, or it may be of ungrounded suspicion, may, in many minds, operate even more effectively and passionately, ten minutes after an injury, than they would after ten years had elapsed." And section 296, same author: "And the *res gestæ* are not to be construed as extending beyond the immediate emanations of the litigated act."

In *Haynes' case*, 28 Gratt., 946, the statement of the prosecutor, that he had been robbed, without even naming the person who robbed him, made to the witness, Disney, immediately after the event and only three or four doors from the place of the robbery, was decided by this court not to be admissible evi-

dence, as part of the *res gestæ*. The court said: "It was the prosecutor's narrative of a past transaction, and was mere hearsay. Nor could such evidence be received for the purpose of corroborating the evidence of McDonough, the prosecutor. Such evidence, upon both the English and American decisions, is plainly inadmissible."

"It would be dangerous, to the last degree, to permit a party making a criminal charge against another, to support his own evidence by proof of declarations made by him, subsequent to the alleged crime. The adjudication of the rights, and the protection of the liberties of the citizen, require that mere hearsay evidence should be excluded; and that the court, in every case, should confine the testimony to the issue made by the pleadings, and to that character of evidence which is legal and admissible under the settled principles of the laws of evidence."

In *Kirby's case*, 77 Va. (2 Hansbrough), Mayo, immediately upon the firing of the pistol with which he was shot through the head, put his hand to his face, felt the blood running, and exclaimed, "Oh my, you have killed me!" and, running out the door crying "murder," walked around the house to the door of Truman Richardson's room in the same house, a distance of only eighty feet, and fell into the arms of Richardson, saying, "I am shot; William Kirby has shot me." This case is, in its circumstances, so widely and essentially different from the case under review, that it does not conflict with the view that the declarations of Moore, the prosecutor, made to Chavis, a quarter of a mile away from the scene of the alleged robbery, and ten minutes after the event, and after he had saluted the retreating robbers in the distance with the angry imprecation, "God damn you, I know you, and I intend to have you in jail before morning," was not admissible evidence, as part of the *res gestæ*, upon the trial of the plaintiff in error, and that it was improperly admitted by the court.

There are other errors assigned, but as they are the same or

similar to the assignments of error which this court has decided to be not well taken in the case just decided, of *Wheeler* v. *Commonwealth* (the said Wheeler having been jointly indicted with the plaintiff in error, Jones), we deem it unnecessary to pass upon them here.

The judgment of this court is, that the judgment of the circuit court of Brunswick county, complained of, is erroneous, and that both it and the judgment of the county court must be reversed and annulled, the verdict of the jury set aside, and a new trial awarded.

LACY, J., dissented.

JUDGMENT REVERSED.