## Richmond

## MARK ANDREW MILLER V. COMMONWEALTH OF VIRGINIA.

April 22, 1977.

Record No. 760670.

Present, All the Justices.

*H. Bradley Evans, Jr. (Evans and Economou,* on briefs), for plaintiff in error.

*Jerry P. Slonaker, Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief), for defendant in error.

HARMAN, J., delivered the opinion of the court.

On February 10, 1975, Mark Andrew Miller (Miller or defendant) was convicted of first degree murder and armed robbery at a consolidated trial before a jury whose verdicts fixed his punishment at confinement in the penitentiary for terms of 38 years and 11 years, respectively. From the trial court's order imposing sentence on those verdicts, the defendant filed a petition for a writ of error which we denied on October 31, 1975, because the appeal had not been perfected in the manner required by law.

On May 6, 1976, the Commonwealth filed with this court a motion alleging that Miller had been denied his right to petition for an appeal and requesting that this court, in the interest of justice, entertain a delayed appeal. To this motion was appended an order dated April 30, 1976, wherein the Circuit Court of the City of Alexandria, in a habeas corpus proceeding, found that Miller, through no fault of his own, had been denied appellate review. On May 13, 1976, we granted Miller leave to proceed *in forma pauperis* and to file with us a delayed petition for a writ of error. Such a petition was subsequently filed and on December 3, 1976, we granted a writ of error limited to Miller's claim that the trial court erred in finding there had been no denial of Miller's right to a speedy trial, and in overruling Miller's pleas of autrefois acquit and double jeopardy.

The murder and armed robbery of which Miller was convicted occurred on November 3, 1972, at a hardware store on Duke Street in Alexandria. Miller and another black man, Eddie C. Faulkner (Faulkner), entered the store around 1:00 p.m. and, at gunpoint, robbed the owner and employees of approximately

$200 in cash and a grey metal cash box. The evidence shows that Merrill Sanborn, an employee of the hardware store, was shot and killed during the robbery. The defendant was arrested on the following day, November 4, and was indicted on January 2, 1973, for the murder and robbery.

At a consolidated jury trial on the indictments on April 19 and 20, 1973, the jury was unable to agree upon a verdict. Thereupon, the court discharged the jury and declared a mistrial.

The charges were again set for trial on May 15, 1973, but the cases were continued on the defendant's motion because a material witness summoned by the defendant was absent.

Another jury trial was held on June 19, 20 and 21, 1973. The June 21 trial order recites that the jury returned after due deliberation and advised the court that it was "hopelessly deadlocked". This order shows that the court then "discharged the jury", which is tantamount to a mistrial. The order goes on to recite:

> ". . . Thereupon the attorney for the defendant moved the court for a dismissal which motion was denied and exceptions noted, and the Attorney for the Commonwealth moved the court to nolle prosequi these cases which motion was granted and exceptions of the defendant by counsel were duly noted."

As a result of this order, the defendant was discharged from custody and was under no restraint thereafter for a period of almost 17 months.

On November 4, 1974, a grand jury again returned indictments against the defendant charging him with murdering Sanborn and robbing the hardware store. The defendant was again taken into custody. On November 18 counsel was appointed to defend him.

Miller's counsel promptly filed a plea of autrefois acquit and double jeopardy and a motion that the indictments be dismissed for lack of a speedy trial. On December 19, 1974, the trial court, after a hearing on Miller's pleas and motion, entered an order denying the pleas and overruling the motion.

On January 3, 1975, defendant renewed his motion for dismissal of the indictments for failure of the Commonwealth to provide him with a speedy trial. Attached to the motion was a transcript of an oral statement made by Eddie C. Faulkner to a member of the Nassau County, New York, Police Department on

November 6, 1973. In this statement Faulkner related that he participated in the armed robbery of a hardware store in Alexandria, Virginia, in late October or early November of 1972. Faulkner stated that he, Mark Miller and another black man, known to Faulkner only as "Gun", had planned to rob a McDonald's Restaurant in Alexandria but did not rob the restaurant because a large number of people were present there. He related that he and the other two men went to a nearby hardware store where "Mark asked the man in the store for a bag of nails ... and Gun took out a pistol and said 'this is a stick-up' and told the man to give us all his money ...." The statement went on to relate that Faulkner "heard a gunshot and saw the man fall down near the doorway. [Faulkner] jumped over the man and ran out the door." Faulkner further stated that he "hid out" until the following day when he learned from a newspaper "that the guy Gun had shot was dead". Faulkner "skipped Virginia" and went to New York where he lived and worked under an assumed name, David Parnell, until he was taken into custody by the New York authorities.

At the December 19 hearing, in a colloquy between counsel and the court, the Commonwealth's Attorney represented and vouched that Faulkner made his statement after he had been apprehended in New York on an unrelated charge. The Commonwealth's Attorney further represented that a presentment against both Faulkner and Miller was made to the next grand jury which met after the Commonwealth's Attorney learned of Faulkner's statement.

At the hearing on his renewed motion to dismiss for lack of a speedy trial, the defendant argued that the delay between the time Faulkner's statement was made to the New York police and reindictment of the defendant was chargeable to the Commonwealth. He says this delay was so unconscionable that his motion should have been sustained. The trial court again overruled the defendant's speedy trial motion.

■ We will deal first with the defendant's claim that the trial court should have sustained his plea of autrefois acquit and double jeopardy. Here, as in the trial court, the defendant relies primarily on *Rosser* v. *Commonwealth*, 159 Va. 1028, 167 S.E. 257 (1933). The defendant argues that *Rosser* stands for the proposition that in all circumstances a nolle prosequi entered over a defendant's objection after the trial begins amounts to an

acquittal and bars further prosecution unless there be manifest and urgent necessity for the entry of the nolle prosequi. We do not understand that holding to be so all inclusive as the defendant contends.

In *Rosser*, which was a prosecution for malicious assault, a jury was waived and the Commonwealth's evidence was partly heard by the court. It was at this stage that the Commonwealth entered a nolle prosequi and the indictment was dismissed. Clearly, in those circumstances, the defendant had been placed in jeopardy and, since there were no circumstances of urgent and manifest necessity requiring a mistrial, jeopardy had not been dissipated at the time the attorney for the Commonwealth entered a nolle prosequi. Once the trial is begun and the defendant placed in jeopardy, he is entitled to have it proceed to a verdict or judgment unless some circumstance of manifest and urgent necessity arises which makes a fair trial unlikely or impossible.

Here, where a jury at each of the first two trials reported that it had been unable to reach a verdict and was hopelessly deadlocked, it was within the sound discretion of the trial judge to discharge the jury and declare a mistrial. Nowhere in the record does it appear that the defendant objected to the trial court's action in discharging the jury at either of the first two trials. We can conceive no clearer case of manifest and urgent necessity for a mistrial than that presented to a trial court when it is confronted with a jury which is unable or unwilling to agree on a verdict after due deliberation. Former Code § 19.1-217, which was in full force and effect at the time of each of the defendant's trials, provided:

> ". . . and in any criminal case, the court may discharge the jury when it appears that they cannot agree in a verdict or that there is a manifest necessity for such discharge."

Where the jury, after due deliberation, is unable to agree, and the court, in its sound discretion, dismisses the jury and declares a mistrial without the defendant's consent, a plea of double jeopardy will not be sustained. *Jones* v. *Commonwealth*, 86 Va. 740, 10 S.E. 1004 (1890). Moreover, the consent of the accused is not required in declaring a mistrial. *Washington* v. *Commonwealth*, 216 Va. 185, 194, 217 S.E.2d 815, 823 (1975).

Finding nothing in the record to show the trial court abused its discretion in dismissing the jury when it concluded, in each instance, that the jury would be unable to reach a verdict, the jeopardy which attached at the beginning of each of the first two trials was dissipated, so we find no error in the overruling of the defendant's pleas of autrefois acquit and double jeopardy.

■ Next we consider Miller's claim that he has been denied a speedy trial. His argument on this question is divided into three parts.

He first argues that the indictment should be dismissed because he was not brought to trial within nine months, the time limitation imposed on a felony prosecution by Code § 19.1-191 (1974 Cum. Supp.).[1] The trial court held that the time which elapsed between the nolle prosequi and Miller's reindictment in November, 1974, should not be included in computing the time to which this limitation applied. This ruling was clearly not error for when the original indictment is supplanted by a second indictment, the time contemplated by the statute is to be counted from the time of the second indictment. *See, Brooks* v. *Peyton*, 210 Va. 318, 322, 171 S.E.2d 243, 246 (1969).

■ Miller next asserts a denial of his Sixth Amendment right to speedy trial upon the premise of *Klopfer* v. *North Carolina*, 386 U.S. 213 (1967), in which the United States Supreme Court concluded that the defendant's right to a speedy trial was abridged by "nolle prosequi with leave", which, under North Carolina practice, permitted the prosecutor unilaterally to restore the case to the trial docket at a future time. In *Klopfer* there was a hung jury followed by a mistrial. Seventeen months later, over the defendant's objection, the prosecutor was permitted to enter a "nolle prosequi with leave". An examination of this opinion, however, indicates that it was not the delay *per se* which was pernicious. The Supreme Court's holding is grounded upon the restraint, the anxiety, and the humiliation imposed upon the accused under North Carolina's apparently unique procedure of "nolle prosequi with leave". 386 U.S. at 221. For, as the court pointed out, the pendency of the indictment

---

[1] Acts 1975, c. 495, effective October 1, 1975, repealed Title 19.1, the criminal procedure section of our Code, and reenacted portions of it as Title 19.2. Former Code § 19.1-191, as amended, was reenacted as Code § 19.2-243.

may subject the accused "to public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular causes." 386 U.S. at 222.

A nolle prosequi under Virginia procedure does not suffer the fatal constitutional infirmity which the Supreme Court found in the North Carolina procedure. Under Virginia procedure a nolle prosequi is a discontinuance which discharges the accused from liability on the indictment to which the nolle prosequi is entered. For the prosecution to proceed thereafter for the same offense, a new indictment is required. *Dulin* v. *Lillard, Sheriff,* 91 Va. 718, 20 S.E. 821 (1895).

■ Miller's final speedy trial point is based upon *Barker* v. *Wingo,* 407 U.S. 514 (1972), in which the Supreme Court declined to hold that the constitutional right to a speedy trial could be "quantified into a specified number of days or months". 407 U.S. at 523. Instead, in resolving the question of a defendant's constitutional rights to a speedy trial under the Sixth Amendment, the court adopted a balancing test and identified four factors which should be considered in determining whether the right had been denied. The factors set forth in that opinion are: length of delay, the reason for the delay, the defendant's assertion of his right and prejudice to the defendant. 407 U.S. at 530.

In his argument Miller points to the delay between Faulkner's confession to the New York police in November, 1973, and Miller's reindictment in November, 1974. In view of the uncontradicted avowal and representation of the Commonwealth's Attorney that a new presentment was made and a new indictment obtained without delay as soon as the Virginia authorities learned of the confession, we attach little significance to and give little weight to the delay as a factor under *Barker.*

■ Miller then points to the fact that Faulkner did not testify at trial to the facts related in his oral statement. On this point it suffices to say that the record shows that Faulkner, who had already been convicted on a guilty plea and was awaiting sentence for the same offenses for which Miller was being tried, invoked his Fifth Amendment right against self incrimination and declined to testify when called as a witness by the Commonwealth. In spite of the advice of counsel and a ruling by

the trial court that Faulkner could not invoke the Fifth Amendment, Faulkner continued to refuse to testify. The record indicates that Faulkner, although cited for contempt, adamantly continued his refusal.

Miller asserts three additional reasons why he claims prejudice by the delay between the nolle prosequi and his subsequent reindictment and trial. He first says that he has been prejudiced because he was unable to employ counsel for his third trial. This claim is without merit as the record shows that Miller was fully and ably represented by his appointed counsel at each and every stage of the proceedings after Miller's reindictment. Miller next points to minor differences in the recorded testimony of two Commonwealth's witnesses at earlier hearings and at the third trial. Again we perceive no prejudice as the record reflects that Miller's counsel fully exploited those discrepancies in his cross-examination of the witnesses.

Miller's final claim of prejudice arises from the testimony of another prisoner who was in jail with Miller after Miller's reindictment in November, 1974. This prisoner testified that Miller "frequently bragged" about the charges pending against him. This prisoner testified that on one occasion the defendant told him, the prisoner, that "he [Miller] went into a hardware store on Duke Street and placed a gun to a man's head and took his money, him [Miller] and two other people, and that after he got the money he told the man to kneel, and he [Miller] said this white m- - - - - f- - - - - is going to die, and he [Miller] blew his [the victim's] head off." Miller argues that this testimony would not have been available to the Commonwealth had he been provided a speedy trial since he would never have met and been associated with the other prisoner.

In discussing the prejudice factor of the balancing test established in *Barker*, the court, speaking through Mr. Justice Powell, points out:

> "A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the

most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." (footnote omitted) 407 U.S. at 532.

It should be unnecessary to say that Miller cannot set up his own bragging to his fellow inmate to establish prejudice in the delay preceding his reindictment. Even so, measuring each of the defendant's claims of prejudice against the standard set forth above, it becomes apparent that he has failed to show that he, in any way, was prejudiced by the delay. After the nolle prosequi, the defendant was discharged from custody and was under no restraint until his reindictment some 17 months later. Nothing in the record shows that the delay caused anxiety or concern on Miller's part. Miller makes no claim that the delay resulted in the loss or death of any of his witnesses. Miller's preliminary hearing and his subsequent trials were reported. The court, prior to Miller's third trial, furnished full transcripts of each of the earlier proceedings to Miller's counsel. The minor discrepancies in the testimony of the Commonwealth's witness were not prejudicial to Miller's interest. Indeed, his counsel fully exploited the differences between the trial testimony and earlier testimony of the witnesses to challenge the credibility and veracity of those witnesses at trial.

For the reasons set forth above, the judgment of the trial court will be affirmed.

*Affirmed.*