COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Annunziata and Senior Judge Coleman
Argued by teleconference


BRYAN KEITH PAGE
                                              OPINION BY
v.    Record No. 3040-01-2          JUDGE JAMES W. BENTON, JR.
                                            JUNE 3, 2003
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                 William W. Sweeney, Judge Designate

               David B. Franzén (Feil, Pettit & Williams,
               P.L.C., on brief), for appellant.

               Amy L. Marshall, Assistant Attorney General
               (Jerry W. Kilgore, Attorney General, on
               brief), for appellee.


     A jury convicted Bryan Keith Page of robbery and acquitted

him of the charge of using a firearm in the commission of that

robbery.  Page contends that the Commonwealth was collaterally

estopped from bringing this prosecution because of facts

necessarily resolved by the verdicts in a previous trial.  He

also contends that principles of double jeopardy barred the

second trial.  We disagree and affirm the conviction.

                                I.

     In four indictments, the grand jury charged that on March

17, 2000, Page robbed Christopher David Blickley, used a firearm

while robbing Blickley, robbed Christian David Kocher, and used

a firearm while robbing Kocher.  See Code §§ 18.2-58 and 18.2-53.1.

### The First Trial

Kocher and Blickley both testified that two men approached them while they were walking from their apartment at 10:30 p.m. Kocher and Blickley identified Page as one of the men, and both said he had a gun.  Page ordered Kocher and Blickley to get on the ground and put their hands on their heads.  Kocher and Blickley testified that Page straddled Kocher and the other man straddled Blickley.  Page took Kocher's wallet, containing money, credit cards, and other items.  The other man took Blickley's wallet, cigarette case, and keys.  After the men left, Kocher and Blickley called the police.  Within minutes after Kocher and Blickley described the robbers, police officers in the area detained Page.  Kocher and Blickley then identified Page as one of the robbers.

A police officer testified that he and his tracking dog searched the area where Page had been running and found several items of clothing, Page's identification, and Kocher's and Blickley's identifications and wallets.  The police did not recover a gun from Page's possession or during the search of the area.  Four days after the robberies, a person found a .9mm Glock pistol near the place where the robbery occurred and contacted the police.

The Commonwealth also offered as evidence a videotape of an officer's interview of Page. In that interview, Page said he had contact with either Kocher or Blickley and described that individual as "the shorter one." Page said he was alone when the contact occurred and the contact did not occur at the place where the men said they were robbed. During their trial testimony, however, Kocher and Blickley both denied ever meeting Page before the robbery.

At the conclusion of the evidence, Page's attorney and the prosecutor disagreed on a jury instruction concerning Page's liability as a principal in the second degree for the robbery of Blickley and use of a firearm in that crime because Blickley was accosted by the other man. The trial judge commented that the disputed instruction would confuse the jury and refused to instruct the jury on that theory. During jury deliberations, however, the foreperson asked the trial judge the following question:

> In instructions 7 and 8 where [Page] is charged with the crime of robbery of Mr. Blickley and Mr. Kocher, the question in front of the jury is, does [Page] have to have actually taken the property from both individuals to be guilty of both? In other words if we were to find he only took property from one, do we only find for the one, or the fact that he's there while it's happening they can --

Page's attorney and the prosecutor disagreed as to the appropriate response to the jury's inquiry. The trial judge

instructed the foreperson "to take the instructions that were given to you back and just do the best you can with them" and "to follow the instructions as the instructions are written."

The jury acquitted Page of the robbery and firearm charges relating to Blickley, but was unable to reach a verdict on the robbery and firearm charges relating to Kocher. When the trial judge indicated his intention to enter an order directing a mistrial as to the latter indictments, Page's attorney moved for a judgment of acquittal, alleging collateral estoppel. Following a hearing and argument by both attorneys, the trial judge entered an order declaring a mistrial and setting a new trial on the Kocher indictments.

### The Second Trial

Prior to the second trial, Page's attorney renewed his motion to dismiss and argued that a retrial was barred by principles of double jeopardy and collateral estoppel. The trial judge denied the motion. The evidence at the second trial was substantially the same as at the first trial. Both Kocher and Blickley identified Page as one of the two robbers and as the robber holding the gun. The jury convicted Page of robbing Kocher but acquitted him of using a firearm in the robbery.

### II.

Page contends the Commonwealth was barred (i) by the doctrine of collateral estoppel from litigating in the second trial whether Page was the gunman and (ii) by the guarantee against double jeopardy from relitigating factual issues resolved by the first trial. The Commonwealth responds that no issue of fact that was resolved in Page's favor in the first trial was at

- 4 -

issue in the second trial.

## Collateral Estoppel

The collateral estoppel principle is now well established.

> "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . [C]ollateral estoppel has been an established rule of federal criminal law . . . [for] more than [80] years. . . .

> [T]he rule of collateral estoppel in criminal cases is . . . to be applied . . . with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.

Ashe v. Swenson, 397 U.S. 436, 443-44 (1970) (citation and footnotes omitted).

Page contends the jury in the first trial determined that he was not the gunman. He argues that the acquittal established that he did not rob Blickley and, therefore, necessarily determined he did not use a firearm in committing either robbery.

- 5 -

That analysis overlooks, however, the view that the jury could have taken of the circumstances surrounding the assaults on Kocher and Blickley.

Kocher and Blickley testified at the first trial that Page straddled Kocher and took Kocher's personal items. They also testified that the other man straddled Blickley and took Blickley's personal items. The first jury could have concluded that because Page was not the person who took Blickley's possessions, the other man, not Page, robbed Blickley. Indeed, this is a rational interpretation of the verdict because the first jury was not instructed concerning Page's liability as a principal in the second degree or as an aider and abettor in the commission of the offenses against Blickley. When the record establishes that the prior judgment could have been grounded "upon an issue other than that which the defendant seeks to foreclose from consideration," id. at 444, the doctrine of collateral estoppel does not apply.

Significantly, the first jury specifically did not exonerate Page as the gunman in the Kocher robbery. The jury's acquittals of Page on the Blickley charges and the jury's inability to reach a verdict on the Kocher indictments left open the possibility that Page was present at the event and was the gunman in the Kocher robbery. We hold, therefore, that "viewed with an eye to all the circumstances of the proceedings," id., the record does not establish that the first jury's acquittals of Page on the charges of robbing Blickley and using a gun in that robbery were grounded in the jury's belief that Page was not one of the robbers or did not use a gun in robbing Kocher.

## Double Jeopardy

Equally well established are the traditional double jeopardy principles.

> [T]he Fifth Amendment guarantee against double jeopardy . . . has been said to consist of three separate constitutional protections.  It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense.

North Carolina v. Pearce, 395 U.S. 711, 717 (1969) (citation and footnotes omitted).  Applying these principles, the Supreme Court of Virginia has consistently held that "[w]here the jury, after due deliberation, is unable to agree, and the court, in its sound discretion, dismisses the jury and declares a mistrial without the defendant's consent, a plea of double jeopardy will not be sustained."  Miller v. Commonwealth, 217 Va. 929, 933, 234 S.E.2d 269, 272 (1977) (citing Jones v. Commonwealth, 86 Va. 740, 10 S.E. 1004 (1890)).

Page does not dispute that the jury in the first trial was unable to reach a verdict on the indictments charging him with robbery of Kocher and use of a firearm in the commission of that robbery.  Therefore, we need only cite to the holding in <u>Miller</u> to conclude that Page's double jeopardy plea is meritless.

For these reasons, we affirm the robbery conviction.

<u>Affirmed</u>.