# VIRGINIA:

*In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond on Thursday the 20th day of April, 2023.*

Present: All the Justices

Monique Alicia Williams,                                                                    Appellant,

 against          Record No. 220034
                  Circuit Court No.  CL21001850-00

Commonwealth of Virginia,                                                                Appellee.

                                             Upon an appeal from a judgment
                                             rendered by the Circuit Court of Arlington
                                             County.

Upon consideration of the record, briefs, and argument of counsel, the Court is of opinion that the judgment of the circuit court should be reversed.

Monique Williams appeals from the denial of her expungement petition.  She was arrested on one charge, accessory after the fact of homicide, and she pleaded guilty to an amended charge, obstruction of justice.  She argues that the accessory after the fact of homicide charge was "otherwise dismissed" and, therefore, qualifies for expungement.  For the reasons that follow, we reverse the order denying expungement and remand for further proceedings.

BACKGROUND

Williams was arrested on the charge of accessory after the fact of a homicide, in violation of Code § 18.2-19, a felony.  A grand jury indicted her on that charge.  Williams pleaded "not guilty" to this charge.  Several months later, the prosecution amended the indictment, striking out the accessory after the fact charge and substituting in its place a new charge: obstruction of justice in violation of Code § 18.2-460, a Class 1 Misdemeanor.  Williams did not object to the amendment.  She pleaded guilty to the amended charge.  The circuit court found her guilty and sentenced her to a suspended sentence of 12 months in jail.

Williams later filed a petition for expungement under Code § 19.2-392.2.  She argued that under *Dressner v. Commonwealth*, 285 Va. 1 (2013), the amendment to the indictment operated as an acquittal on the charge of being an accessory after the fact to a homicide, and thus

she had the right to have the records related to the initial accessory to murder charge expunged. The Commonwealth did not oppose Williams' petition for expungement.

The circuit court, however, disagreed. In a memorandum opinion, the circuit court distinguished Williams' case from *Dressner*. It observed that, in *Dressner*, the amended charge "share[d] absolutely nothing similar in any respect" with the original charge. The circuit court assumed without deciding that obstruction of justice was not a lesser included offense of the accessory after the fact of homicide charge. That was not the end of the inquiry, however. The circuit court explained that, in this case, the indictment itself showed that the original accessory after the fact of homicide charge and the amended obstruction of justice charge "share[d] many similarities." Relying on *Necaise v. Commonwealth*, 281 Va. 666 (2011), the circuit court reasoned that "[a]mending an indictment from accessory to a charge of the same 'nature or character' — obstruction of justice — does not render [Williams] an 'innocent citizen' 'falsely accused.'" The circuit court concluded that "[o]bstruction of justice and accessory after the fact are not completely different or separate or unrelated charges by operation of statute and interpretation of precedent." The circuit court added a footnote explaining that Williams' role in the events surrounding the murder are explained in the record of *Commonwealth v. Jason Allen Johnson*, No. CR18000379-00 (Arlington Cnty. Cir. Ct. July 31, 2018), which was attached as an exhibit to its memorandum opinion.

## ANALYSIS

Virginia law permits the expungement of criminal records in certain circumstances. "[T]he threshold determination to be made by the trial court on considering any petition for expungement . . . is whether the petitioner has a right to seek expungement of those records under an applicable provision of Code § 19.2-392.2(A)." *Daniel v. Commonwealth*, 268 Va. 523, 530 (2004). The expungement statute specifies that a person may ask for expungement when the petitioner has been acquitted, or "[a] nolle prosequi is taken or the charge is otherwise dismissed, including dismissal by accord and satisfaction pursuant to § 19.2-151." Code § 19.2-392.2(A)(2).

Williams contends that the circuit court employed an incorrect standard in adjudicating her petition for expungement. According to Williams, expungement of a charge that has been amended "rests on a comparative analysis of the elements between criminal offenses. In other

2

words, the inquiry is whether the misdemeanor the petitioner was convicted of is a lesser-included offense of the felony sought to be expunged."[1] We disagree.

## I. DETERMINING WHEN A CHARGE IS "OTHERWISE DISMISSED."

The terms acquittal and nolle prosequi, or nolle prosse, are readily understood. The meaning of the phrase "otherwise dismissed" is not as clear. A criminal case may be dismissed for a variety of reasons. *See, e.g.*, Code § 19.2-8 (misdemeanor statute of limitations); Code § 19.2-294 (statutory double jeopardy); *Groffel v. Commonwealth*, 70 Va. App. 681, 687 (2019) (constitutional double jeopardy), *aff'd*, 299 Va. 271 (2020). We have construed the phrase "otherwise dismissed" more broadly, however, to encompass more than a literal dismissal.

Whether a charge has been "otherwise dismissed" is a question of law that we review de novo. *Dressner*, 285 Va. at 5. In construing the expungement statute, we have considered the purpose of the statute, which is to allow "innocent citizens" to avoid the consequences that flow from the existence of arrest records. Code § 19.2-392.1.

Where a petitioner is convicted of a lesser included offense of the original charge, the original charge does not qualify for expungement. *Necaise*, 281 Va. at 669-70. In *Necaise*, the petitioner pleaded guilty to two misdemeanor charges that were lesser-included offenses of two original felony charges. *Id.* at 667-69. We held that these original charges were ineligible for expungement. We explained that "[b]ecause the misdemeanors of which Necaise was convicted were lesser included offenses of the felonies with which he was charged, all of the elements of the offenses of which he was convicted were subsumed within the felony charges and they form[ed] the sole bases for the convictions." *Id.* at 669. When a person is convicted of lesser included offenses, that person has "been found guilty of offenses charged within the warrants upon which he was arrested," and is "not an 'innocent citizen' entitled to the benefit of the expungement statutes." *Id.* at 670.

When a charge is not a lesser included offense, the inquiry turns on whether the charge is a "completely separate and unrelated charge." *Dressner*, 285 Va. at 6. In *Dressner*, the petitioner was originally charged by summons with possession of marijuana. *Id.* at 3. The

---

[1] In their briefs and at oral argument, both sides draw from existing precedent. Neither party has asked us to discard our existing approach in favor of a radically new test. Stare decisis, therefore, not only applies as it ordinarily would, *Selected Risks Insurance Co. v. Dean*, 233 Va. 260, 265 (1987), it applies with all the more force when neither side has asked us to overturn our precedent.

charge was amended to reckless driving. *Id*. at 3-4. The petitioner sought to expunge the police and court records related to the marijuana charge. *Id.* at 4. We concluded that the petitioner was entitled to seek expungement, reasoning that the marijuana charge was "otherwise dismissed." *Id.* at 7. We observed that reckless driving is a "completely separate and unrelated" charge compared to possession of marijuana. *Id.* at 6. Furthermore, "[r]eckless driving is not a lesser-included offense of possession of marijuana." *Id.* We observed that "'the elements of the offense[] of which [Dressner] was convicted' were not 'subsumed within the [possession of marijuana charge]' and did not 'form the sole bas[i]s for the conviction[].'" *Id.* (alterations in original) (quoting *Necaise*, 281 Va. at 669). Consequently, the petitioner "occupie[d] the 'status of "innocent"'" with respect to that charge. *Id.* at 7 (quoting *Brown v. Commonwealth*, 278 Va. 92, 102 (2009)).

In *A.R.A. v. Commonwealth*, 295 Va. 153, 157 (2018), "[t]he dispositive question [before us was] whether the petitioner established that the continued existence and possible dissemination of a felony arrest record would constitute an actual or a potential 'manifest injustice.'" Nevertheless, as a threshold matter, we held that the petitioner's charges were "otherwise dismissed" so as to render them eligible for expungement. *Id.* at 158. We reiterated *Dressner*'s standard for when a criminal charge is "otherwise dismissed." *Id.*

In determining whether a charge qualifies for expungement on the basis that it was "otherwise dismissed," a court should examine whether the charge for which the petitioner was convicted is a lesser included offense of the original charge. If it is, the petitioner does not occupy the status of innocent, and the original charge cannot be expunged. *Necaise*, 281 Va. at 670. Similarly, as a majority of the Court has recently held, if "[an] amendment to the arrest warrant [for the original charge] relate[s] only to the sentencing enhancement sought to be imposed, [and] not the underlying offense," it "simply cannot be said that the amendment resulted in a completely separate and unrelated charge" that would render the original charge eligible for expungement. *Forness v. Commonwealth*, ___ Va. ___, ___, 882 S.E.2d 201, 203 (2023). However, if the original charge is "completely separate and unrelated" to the charge the petitioner was convicted of, and the elements of that offense are not subsumed within the original charge, the petitioner is eligible to seek expungement of the original charge. *Dressner*, 285 Va. at 6.

4

A determination of whether an amended charge is "completely separate [from] and unrelated" to the original charge is not equivalent to a mechanical application of the *Blockburger*[2] test. Rather, a court should (1) compare the conceptual similarities and differences between the original charge and the amended charge and (2) examine whether the two charges share a common nucleus of operative facts. For example, a charge of robbery that is amended to a charge of grand larceny from the person is not "completely separate and unrelated" if both originate from the same background facts.

In determining whether an original charge is "completely separate and unrelated," a court may consult the underlying records of the petitioner's criminal case, or related criminal cases, including any transcripts.[3] However, the presentation of new evidence to prove the petitioner's guilt or innocence is not permitted. The focus of an expungement proceeding is on existing court records; its purpose is not to engage in a retrial of a concluded criminal case. *A.R.A.*, 295 Va. at 159.

The burden rests with the petitioner to show that the original charge that was later amended qualifies as one that was "otherwise dismissed." *Eastlack v. Commonwealth*, 282 Va. 120, 123 (2011).[4]

II.     WE REMAND FOR RECONSIDERATION UNDER THE APPROPRIATE STANDARD.

The circuit court did not rely on a *Blockburger* comparison of the elements to deny the expungement petition. Rather, the circuit court below relied on Code § 19.2-231, which governs the amendment of a charging instrument, to determine whether the amended obstruction of justice charge was completely separate from and unrelated to the original charge of accessory after the fact of murder. In light of our clarification of the standard that applies to the review of expungement petitions when the claim is that the original charge was "otherwise dismissed," we reverse the judgment below and remand for the circuit court to review anew Williams'

---

[2] *See Blockburger v. United States*, 284 U.S. 299 (1932).

[3] Williams also assigns error to the trial court's taking of judicial notice of court records in a separate case. We need not address this issue in light of our remand. Nevertheless, we note that if a court does take judicial notice of court records, such notice must be taken in conformity with the rules that govern such notice. *See* Rule 2:201.

[4] The General Assembly, as the policy making body of our Commonwealth, remains free, of course, to narrow or to broaden the scope of the expungement statute. Whether it should do so is for that body to determine. It is not the province of the courts to "inquire into the wisdom of legislation." *Hamilton v. Kentucky Distilleries & Warehouse Co.*, 251 U.S. 146, 161 (1919).

expungement petition.

JUSTICE MANN, concurring in the judgment.

The majority's decision today culminates in a reversal. I, much like the majority, am trying my best to work within the constraints in which the Code's ambiguity has placed the Court. In doing so, I come to the majority's result, but by considerably different measures.

Over the passage of time, the remedial intent of Code § 19.2-392.2 has been neutralized by the common law this Court has been forced to create. The tests we have crafted to construe the statute were only necessary to begin with because the statutory expungement framework was really a vision without direction. Tasked with interpreting the statute, this Court had no good options when it began to populate the resulting vacuum with different analytical rules to determine who was the recipient of the legislature's grace. The resulting jurisprudential structure has become unworkable and unwieldy. The body of expungement law created by a well-intentioned redefinition of eligibility has left the bench and bar in a difficult position.

I recognize and appreciate that our function is to engage in the process of statutory construction to determine the intent of the legislature. Once we do that our function "is to resolve cases based on the law." *Taylor v. Northam,* 300 Va. 230, 247 (2021). Stated more starkly, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

Further recognizing our preference to conform to the restrictions of the doctrine of judicial review, there is a point where the statute in question which has been construed by this Court in different factual settings creates ongoing difficulties relative to its practical and common application. That is where we are now. As such, it is appropriate for this Court to identify the issue for the legislature and request clarification. This is not unprecedented. *See, e.g., Butcher v. Commonwealth*, 298 Va. 392 (2020) (Mims, J. concurring).

The practical application of the expungement statute as applied to different factual scenarios cause difficulties for the reasons set out below. "It therefore is not in the interest of justice to postpone resolving the issue highlighted by our diverging interpretations of what the statute requires." *Id.* at 407. While an unusual request, I respectfully write separately to ask the General Assembly to "clarify the statute to express its legislative intent now." *Id.*

6

Notwithstanding my analysis as to the legislature's intent below, should the legislature decide to clarify "otherwise dismissed" it will be our function to interpret and to apply the law.

## I. A STATUTORY OVERVIEW

The majority, using the "completely separate and unrelated charge" language from *Dressner*[1] as guidance, argues that using a factual-relatedness test[2] is necessary to determine whether a petitioner is eligible for expungement. I suggest that the construction of the plain language of Code § 19.2-392.2 should control in the absence of guidance from the legislature, not a factual-relatedness test. But that guidance is needed.

### A. LOOKING FOR GUIDANCE

Before I turn to Code § 19.2-392.2, it is helpful to look at expungement procedures from other states. There are three states whose statutes share the "otherwise dismissed" phrase used in Code § 19.2-392.2. Each state naturally differs in which charges they deem eligible for expungement. As examined below, in jurisdictions where a factual-relatedness test is used, the legislature of that jurisdiction has expressly included the requirement in their Code, and often only requires the test when multiple charges arise out of one course of conduct. In the absence of clear instruction from our General Assembly, the manner in which these states use "otherwise dismissed" provides persuasive guidance.

Iowa's expungement statute contains language most similar to ours. *See* Iowa Code § 901C.2. In *State v. Doe*, the Iowa Court of Appeals held that a case had been "otherwise dismissed" when it became inactive. 949 N.W.2d 658 (Iowa Ct. App. 2020) (holding that when a case has been "transferred" or merged into another case number, the original case becomes inactive and is considered otherwise dismissed). The Iowa Supreme Court has rejected a "factual-relatedness" test for expungements because their statute, much like ours, does not contain language enacted by their legislature permitting that analysis. *See State v. Doe,* 903

---

[1] *Dressner v. Commonwealth*, 285 Va. 1 (2013).

[2] Many jurisdictions that follow a form of the majority's test refer to it as a factual-relatedness test. For simplicity, I refer to the majority's test in this manner. Often, this test is only used when a petitioner is seeking expungement of one or more charges from a group of charges received simultaneously that have not been formally dismissed. *See, e.g.,* Md. Code Ann., Crim. Proc. § 10–107. It does not appear that any jurisdiction has expanded this factual-relatedness test to require a factual comparison of conduct giving rise to a single charge that is thereafter amended in the manner our majority does today.

N.W.2d 347 (Iowa 2017), *as amended* (Nov. 15, 2017).

Similarly, Delaware's expungement statute states that a case is eligible for expungement if the case is "terminated in favor of the accused" in seven specific manners, one of which is when "[a]ll charges related to the case are otherwise dismissed." Del. Code Ann. tit. 11, § 4372(b)(4). Delaware does not require a factual-relatedness test to determine eligibility of "otherwise dismissed" charges but does require that all charges related to the case are dismissed. *Id.* Delaware's expungement statute also shares a purpose similar to Code § 19.2-392.2 in recognizing that "criminal history is a hinderance to a person's present and future ability to obtain employment, housing, education, or credit," and was enacted "to protect persons from unwarranted damage which may occur when the existence of a criminal history continues indefinitely." Del. Code Ann. tit. 11, § 4371.

Finally, Maryland's expungement statute also contains "otherwise dismissed" language. Md. Code Ann., Crim. Proc. § 10–105(a). However, Maryland has separately enacted Md. Code Ann., Crim. Proc. § 10–107 specifically for expungement of charges arising from the same incident, transaction, or set of facts. Md. Code Ann., Crim. Proc. § 10–107 states that if two or more charges . . . arise from the same incident, transaction, or set of facts, they are considered to be a unit," (a)(1), and "[i]f a person is not entitled to expungement of one charge or conviction in a unit, the person is not entitled to expungement of any other charge or conviction in the unit." (b)(1). Therefore, Maryland's legislature has expressly approved a factual-relatedness test only in situations arising from two or more charges.

Our General Assembly has not codified the test in *any* situation. Accordingly, our Code does not explicitly permit trial courts to engage in fact-finding to determine the relatedness of original and amended charges in resolving expungement eligibility. Instead, the General Assembly has provided only a narrow mechanism to allow for the introduction of information barring an expungement. *See* Code § 19.2-392.2(F) (providing the Commonwealth's Attorney an opportunity to show good cause as to why an expungement should not be granted). The introduction of evidence showing good cause can serve as a mechanism to assist a trial court in determining whether a petitioner should receive an expungement. Without explicit language enacted by the General Assembly, this Court should avoid erecting procedural hurdles that the legislature chose not to incorporate into the Code. It bears repeating: clarity provided by the

8

General Assembly would provide much-needed guidance for this Court to use in determining expungement eligibility.

In looking for guidance, many states take a similar approach to Delaware in explicitly listing the circumstances that permit an expungement. *See, e.g.,* Mo. Rev. Stat. § 610.105(1) ("If the person arrested is charged but the case is subsequently nolle prossed, dismissed, or the accused is found not guilty or imposition of sentence is suspended in the court in which the action is prosecuted, official records pertaining to the case shall thereafter be closed records when such case is finally terminated."). By providing explicit circumstances in which an expungement can be granted, the legislature leaves no vacuum for the courts to populate.

Importantly, there are states that have chosen to embrace the remedial nature of expungements and permit the expungement of a case where no disposition has been reached or the case has not been prosecuted. *See* Miss. Code Ann. § 99-15-57(2); § 99-15-26(5) ("Upon petition therefor, the court shall expunge the record of any case in which an arrest was made, the person arrested was released and the case was dismissed or the charges were dropped, there was no disposition of such case, or the person was found not guilty at trial."); N.H. Rev. Stat. Ann. § 651:5(II-a)(a) ("For an offense disposed of on or after January 1, 2019, any person whose arrest has resulted in a finding of not guilty on all charges that resulted from the arrest, or whose case was dismissed or not prosecuted, shall have the arrest record and court record annulled."); 18 Pa. Stat. § 9122(a) ("Criminal history record information shall be expunged in a specific criminal proceeding when: (1) no disposition has been received or, upon request for criminal history record information, no disposition has been recorded in the repository within 18 months after the date of arrest and the court of proper jurisdiction certifies to the director of the repository that no disposition is available and no action is pending.").

Unfortunately, while "otherwise dismissed" is broad language, it does not provide broad relief, thus leaving this Court's hands tied. In the interim, I turn to Code § 19.2-392.2, using the above guidance from states to help guide the analysis.

### B. UNTANGLING CODE § 19.2-392.2

To remain true to the express legislative purpose of the statute, the Commonwealth can simplify that which has become complicated thusly: "otherwise dismissed" means a criminal defendant was not convicted of the charge which brought him or her into the criminal justice system.

I do not suggest anything groundbreaking. Rather, through traditional statutory construction the legislature's intent can be gleaned. "'[T]he primary objective of statutory construction is to ascertain and give effect to legislative intent.'" *Conger v. Barrett*, 280 Va. 627, 630 (2010) (alteration in original) (quoting *Turner v. Commonwealth*, 226 Va. 456, 459, (1983)). "'When the language of a statute is unambiguous, we are bound by the plain meaning of that language.'" *Commonwealth v. Morris*, 281 Va. 70, 76 (2011) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). "'If a statute is subject to more than one interpretation, we *must* apply the interpretation that will carry out the legislative intent behind the statute.'" *Id.* (quoting *Conyers*, 273 Va. at 104) (emphasis added).

A petitioner is eligible for an expungement if they have been acquitted of the charged crime or a "nolle prosequi is taken or the charge is *otherwise dismissed*." Code §§ 19.2-392.2(A)(1) and (2) (emphasis added). Argument over the phrase "otherwise dismissed" continues to come before this Court and is the source of many of our judicially defined criteria for Code § 19.2-392.2 eligibility. *See, e.g., Forness v. Commonwealth*, 302 Va. ___, ___, 882 S.E.2d 201, 203 (2023) (holding that an admittedly wrongfully charged felony was nonetheless ineligible for expungement because the original charge had been amended to a lesser-included offense and was therefore not "otherwise dismissed"); *Dressner*, 285 Va. 1 (holding that when a criminal charge is amended to a separate and unrelated charge, and the elements of that amended charge are not subsumed within the original charge, the petitioner is eligible for expungement); *see also Commonwealth v. Jackson*, 255 Va. 552, 555-56 (1998) (holding that a defendant who pleaded nolo contendere and later received a dismissal of his charge was ineligible for expungement).

However, the General Assembly has recently abrogated some of this Court's precedent to permit expungement of charges resulting from deferred dispositions despite the entry of guilty pleas. *See, e.g.,* Code § 19.2-298.02(D) ("Upon agreement of all parties, a charge that is dismissed pursuant to [deferred disposition] may be considered as otherwise dismissed for purposes of expungement of police and court records in accordance with § 19.2-392.2."). With these legislative trends guiding the way, the General Assembly has provided the initial framework for this Court, but without more specific guidance on the term "otherwise dismissed," this Court is still bound by its prior precedent and is unable to free itself from its constraints.

10

Without additional guidance concerning whether "otherwise dismissed," applies to an unadjudicated original charge where a petitioner has been convicted of an amended charge, I look to the General Assembly's intent. Code § 19.2-392.1 states, in relevant part, that "[t]he General Assembly finds that arrest records can be a hindrance to an innocent citizen's ability to obtain employment, an education and to obtain credit." We should therefore read Code § 19.2-392.2 with this policy statement inspiring and pervading all analysis. *See Rector and Visitors of University of Virginia v. Harris*, 239 Va. 119, 124 (1990) (quoting *Board of Sup. v. King Land Corp.*, 238 Va. 97, 102-03 (1989)) ("Every statute should be read so as to 'promote the ability of the enactment to remedy the mischief at which it is directed. . ..' All other rules of construction are subservient to that intent.").

The definition of "otherwise" is broad, but instructive here. "Otherwise" means "in a different way or manner" or "in different circumstances." Webster's Third New International Dictionary 1598 (2002). The definition of "dismiss" provides additional guidance. "Dismiss" means "to put (a legal action or a party) out of judicial consideration: refuse to hear or hear further in court." *Id.* at 652. It appears to me that the term "otherwise dismissed" therefore means to put a legal action out of consideration in a different way or manner than a nolle prosse or dismissal in fact by the trial court. This definition is consistent with the General Assembly's intent to ensure that an innocent citizen's arrest records are not "a hindrance to an innocent citizen's ability to obtain employment, an education and to obtain credit." Code § 19.2-392.1.

This interpretation makes practical sense as well. A nolle prossed charge may be resurrected by the Commonwealth so long as the proper procedural requirements are met.[3] If a nolle prossed charge is eligible for an expungement, an indictment preceding an amended charge should likewise be eligible for expungement. Both a nolle prosse and a motion to amend an indictment have the same result: the criminal proceeding of the initial charge ceases immediately. Thus, they should not be treated differently. If a charge has been put out of

---

[3] For the Commonwealth's Attorney to resurrect a nolle prossed charge, a new indictment is required. *Miller v. Commonwealth,* 217 Va. 929, 935 (1977). This "indictment is a *new* charge, distinct from the original charge or indictment." *Harris v. Commonwealth,* 258 Va. 576, 585 (1999) (emphasis added).

11

judicial consideration in any manner, unless explicitly prohibited by the General Assembly,[4] the charge should be eligible for expungement so that it does not become a hinderance to employment, education, or credit.[5] The language allows for a simple application without the need for further statutory construction.[6]

As previously explained, there is nothing groundbreaking in the call for legislative clarification. No philosophical or conceptual legislative debate need occur to populate the General Assembly's intent as construed herein, but a clarifying definition is necessary

---

[4] *See, e.g.,* Code § 19.2-57.3(E) ("No charges dismissed pursuant to this section shall be eligible for expungement under § 19.2-392.2").

[5] I emphasize that this reading does not lead to a result whereby every petitioner will be granted an expungement, it merely provides a petitioner with procedural eligibility for an expungement. It does not abrogate or affect the Commonwealth's discretion to object to an expungement, to show good cause, or to request that a showing of manifest injustice be made.

[6] I recognize that my proposed path forward is the minority view. My concurrence is one borne out of two problems with the majority's test: its requirement of a factual determination, and the costs borne by the petitioner.
We have expressly held that, "[a] petitioner . . . cannot simultaneously occupy the status of innocent and be required to prove her actual innocence of a crime the Commonwealth declined to prosecute." *A.R.A. v. Commonwealth*, 295 Va. 153, 159 (2018). The majority's framework could compel a petitioner to do just that. The majority's opinion states that a trial judge is not to engage in the retrial of the petitioner's original charge, but the practical effect of asking a judge to look at the underlying facts of an unadjudicated original charge could lead a trial court to engage in machinations which will surely degrade the guidance of *A.R.A.* The reality of the matter is that if a person is charged with a crime based on certain conduct, any amended charge is almost always going to result from the same "common nucleus of operative facts." *Supra* at 6. If there is unrelated conduct, it is more likely to have resulted in a separate charge than become the basis for an amended charge.
The most concerning impact of this test is the heavy burden it places on petitioners. Courts in this Commonwealth do not retain records indefinitely, leaving certain warrants, transcripts, and plea agreements unavailable. *See, e.g.,* Code § 16.1-69.55. How is a petitioner seeking expungement of an older charge expected to overcome this factual-relatedness test if there is no evidence available to him to meet this burden? The test also encourages trial judges to look through "related criminal cases," which a petitioner may not have access to, particularly if relevant materials in the file are sealed. The procedural difficulties petitioners face are not only issues of access, but issues of cost. The majority suggests that "a court may consult the underlying records of the petitioner's criminal case, or related criminal cases, including any transcripts." *Supra* at 6. Leaving aside evidentiary and admissibility concerns, if the trier of fact requires court transcripts, the burden will be on the petitioner to provide them. Transcripts are not affordable, especially when a petitioner may already be struggling with employment or housing stability because of his or her arrest over a charge which was otherwise dismissed.

nonetheless given this Court's precedent. I recognize that this Court is bound by the doctrine of stare decisis, which demands that "precedent is to be respected unless the most convincing of reasons demonstrates that adherence to it puts us on a course that is sure error." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 362-63 (2010). This adherence "does not, however, compel [this Court] to perpetuate what [it] believe[s] to be an incorrect application of the law" and this Court will not ignore the "duty to develop the orderly evolution of the common law of this Commonwealth." *Nunnally v. Artis*, 254 Va. 247, 253 (1997). Thus, my analysis continues.

## II. HOW CLARIFICATION WOULD INFORM THIS SPECIFIC CASE

### A. "OTHERWISE DISMISSED" BROADLY CONSIDERED

In the struggle over the application of "otherwise dismissed," this Court has not yet addressed the unique question presented by this case as to whether an indictment amended to a charge that is not a lesser-included charge under *Blockburger* is eligible for expungement. To effectively answer the question before us, it is necessary to address the meaning of "otherwise dismissed," in a way that is consistent with traditional guidelines of statutory construction. In this way, once again, it is my hope that the legislature will see this construction as naturally flowing from its intent rather than any type of transformational amendment. In this way the trial courts of the Commonwealth will be able to apply a uniform standard in the statute's routine application.

### B. MS. WILLIAMS' EXPUNGEMENT ELIGIBILITY

Using the proposed definition of "otherwise dismissed," instead of a factual-relatedness test, Ms. Williams was eligible for an expungement. However, she was also eligible for an expungement under this Court's prior *Blockburger* standard.

Ms. Williams' felony indictment for accessory after the fact to homicide in violation of Code § 18.2-19 was struck and the indictment was amended to misdemeanor obstruction of justice in violation of Code § 18.2-460. The amended indictment deleted all the language from the original indictment; not a single word of the original charge is included in the amended indictment for obstruction of justice. There can be no question that the original charge was put out of judicial consideration by the trial court. Accordingly, amending the original charge in the indictment otherwise dismisses that charge, thus making it eligible for expungement under a logical reading of Code § 19.2-392.2.

13

Under my proposed interpretation of "otherwise dismissed," a *Blockburger* analysis would become unnecessary.  Nevertheless, a *Blockburger* test would render her charge eligible for expungement.  Comparing the elements of the two crimes[7] reveals that they share no similarities under a traditional *Blockburger* analysis.  The majority and trial court relied on the "separate and unrelated" language from *Dressner*.  285 Va. at 6.  However, the holding of *Dressner* made clear that the *elements* of the two charges were separate and unrelated, and therefore, the petitioner "occupie[d] the 'status of "innocent"'" because the elements of her amended charge were not subsumed within her original charge.  *Id.* at 7 (quoting *Brown v. Commonwealth*, 278 Va. 92, 102 (2009)).  Thus, under a plain language definition of "otherwise dismissed," or the traditional *Blockburger* analysis, Ms. Williams is eligible for an expungement.[8]

CONCLUSION

> In truth, expungement was always somewhat of a paradox: a remedy conceived in
> hope but forged through an accompanying set of procedures that diminished that
> promise, limiting its relief to the fortunate few rather than the necessary many.
> The procedural limits of expungement law have always stunted the potential of
> the remedy.[9]

---

[7] The elements of accessory after the fact to a homicide are:  (1) the homicide must be complete, (2) the accused must know that the felon is guilty, and (3) the accused must receive, relieve, comfort, or assist the felon.  *Commonwealth v. Dalton*, 259 Va. 249, 253 (2000); Code § 18.2-19 (establishing the punishment for a conviction of accessory after the fact).  Under Code § 18.2-460, obstruction of justice requires either that the accused (1) knowingly obstructs an enumerated officer of the law or does not cease obstruction when requested, (2) by threat or force intimidates or impedes an enumerated officer, (3) knowingly or willfully makes a materially false statement to an officer during an investigation, or (4) intentionally prevents or tries to resist their own lawful arrest.

[8] Because I would find that Ms. Williams was eligible for expungement of her original charge, I would decline to rule on the other assignments of error, as our decision should be based on the best and narrowest ground possible.  *McGhee v. Commonwealth*, 280 Va. 620, 626, n.4 (2010) (citing *Air Courier Conference v. American Postal Workers Union*, 498 U.S. 517, 531 (1991) (Stevens, J., concurring) (faithful adherence to the doctrine of judicial restraint warrants decision of cases "on the best and narrowest ground available")).

[9] Brian M. Murray, *Completing Expungement*, 56 U. Rich. L. Rev. 1165, 1167 (2022) (internal citations omitted).

Because I urge the General Assembly to make clear that the term "otherwise dismissed" means to render a legal action out of consideration in a different way or manner than a nolle prosse or formal dismissal by the trial court, Ms. Williams would be eligible for expungement. In this case, the petitioner was saddled with a process we have made so difficult and then, by extension, the trial court was required to utilize a conceptual framework that collapses under its own weight. Therefore, I concur only in the judgment of the majority, and entreat the General Assembly to provide this Court with the necessary guidance so that the bench and bar may utilize a clear framework to access Code § 19.2-392.2's remedial relief.

This order shall be published in the Virginia Reports and certified to the Circuit Court of Arlington County.

A Copy,

Teste:

Clerk

15